STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald W. STEWART, Defendant-Appellant.

Court of Appeals

*Nos. 2005AP979–CR, 2005AP980–CR. Submitted on briefs February 2, 2006.—Decided March 15, 2006.*

2006 WI App 67

(Also reported in 713 N.W.2d 165.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Eileen W. Pray*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. Ronald W. Stewart appeals from judgments convicting him of felony bail jumping and felony fleeing and orders denying his postconviction motions. The parties agree and so do we that the trial court erred in imposing an eight-year term of probation for Stewart's felony bail jumping conviction. WISCONSIN STAT. § 973.09(2)(b) (2003–04)[1] expressly provides that the maximum term of probation for Class B-H felonies is linked to the maximum term of confinement for the crimes in those classes. Felony bail jumping is a Class H felony and the maximum term of confinement for a Class H felony is three years. Because Stewart was convicted of two felonies at the same time, the maximum period of probation under § 973.09(2)(b) is five years. Therefore, Stewart's eight-year term of probation is commuted under WIS. STAT. § 973.09(2m) to a five-year term.

¶ 2. Stewart also argues that the trial court erred in imposing as a condition of probation for the felony bail jumping conviction and as a condition of extended supervision for the felony fleeing conviction that he was not to enter Richmond township in Walworth county. We conclude that this geographical limitation does not comply with the requirements that it be narrowly drawn and not unduly restrictive of his liberties. Therefore, the condition precluding Stewart from entering

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

Richmond township is stricken from the judgments of conviction. We remand so the trial court can enter amended judgments of conviction consistent with this opinion.

### *Eight-year term of probation*

¶ 3. Stewart pled guilty to felony bail jumping in violation of Wis. Stat. § 946.49(1)(b). The trial court sentenced Stewart to an eight-year probation term. The court determined that pursuant to Wis. Stat. § 973.09(2)(b), the maximum term of probation depends upon the maximum term of imprisonment and not the maximum term of confinement. The maximum term of imprisonment equals the maximum term of initial confinement plus the maximum term of extended supervision. Michael B. Brennan, Thomas J. Hammer & Donald V. Latorraca, *Fully Implementing Truth-In-Sentencing,* Wis. Law., Nov. 2002, at 12 Figure 1. From this, the trial court reasoned that the maximum term of probation for a felony bail jumping conviction, a Class H felony, is six years: the maximum term of confinement is three years and the maximum term of extended supervision is three years. *See* Wis. Stat. § 973.01(2)(b) and (d). The trial court then added one year for each of Stewart's felony convictions for a total term of probation of eight years. *See* § 973.09(2)(b). The parties both agree that the trial court's interpretation and application of § 973.09(2)(b) runs contrary the statute's plain language.

■■■

¶ 4. Statutory interpretation and the application of a statute to specific facts are questions of law that we review de novo. *State v. Moran,* 2005 WI 115, ¶ 26, 284 Wis. 2d 24, 700 N.W.2d 884. "[S]tatutory interpretation

'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " *Id.* (citation omitted). " 'If this process of analysis yields a plain, clear, statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' Where statutory language is unambiguous, there is no need to consult extrinsic sources of interpretation, such as legislative history." *Id.* (citation omitted).

██

¶ 5. WISCONSIN STAT. § 973.09(2) provides:

**(2)** The original term of probation shall be:

. . . .

(b) 1. Except as provided in subd. 2., for felonies, not less than one year nor more than either *the maximum term of confinement in prison for the crime* or 3 years, whichever is greater.

2. If the probationer is convicted of 2 or more crimes, including at least one felony, at the same time, the maximum original term of probation may be increased by one year for each felony conviction.

*Id.* (emphasis added). Thus, the statute plainly and unambiguously provides that the maximum term of probation is dependent upon the maximum term of confinement for the crime committed and not, as the trial court held, the maximum term of imprisonment.

¶ 6. While the language of the statute is clear and we need not consult extrinsic sources, we do observe that our interpretation of WIS. STAT. § 973.09(2)(b) is consistent with the interpretations set forth by other judges and legal scholars. The record contains a chart constructed by Judge Patrick J. Fiedler. The chart

entitled "Truth in Sentencing II—Penalty Chart" shows that under § 973.09(2)(b), the maximum term of probation equals the maximum term of confinement for Class B-H felonies.

¶ 7. The record also contains a November 2002 Wisconsin Lawyer article entitled "Fully Implementing Truth-In-Sentencing" written by Judge Michael B. Brennan, Thomas J. Hammer and Donald V. Latorraca. Judge Brennan was the staff counsel for, and Hammer served on, the Criminal Penalties Study Committee (CPSC), which was the entity responsible for drafting proposed statutes for the full implementation of truth-in-sentencing. *See* Brennan, *supra,* at 10 & 10 n.a1, 11–12.

¶ 8. In their Wisconsin Lawyer article, Judge Brennan and Hammer and Latorraca teach that prior to TIS-II, the original term of probation for a person convicted of a felony could not be more than either *the statutory maximum term of imprisonment* for the crime or three years, whichever was greater. *See* Brennan, *supra,* at 49. The authors then instruct that following the enactment of TIS-II, "[t]he maximum term of probation for Class B-H felonies equals the maximum initial term of confinement for those crimes." *See* Brennan, *supra,* at 12 Figure 1, 49. The authors explain the reasons for the changes as follows:

> The CPSC recommended that the maximum original term of probation for Class B-H felonies be linked to the maximum term of *confinement* for crimes in those classes, rather than the maximum term of *imprisonment*. The committee believed that the dual objects of probation—rehabilitation of the offender and protection of the state and community interest—could be achieved within these time periods. The legislature adopted the CPSC's recommendations.

*Id.* at 49 (footnotes omitted).

¶ 9. Having set forth the proper interpretation of Wis. Stat. § 973.09(2), we now turn to its application in this case. Stewart was convicted of felony bail jumping, which is a Class H felony. The maximum term of confinement for a Class H felony is three years. *See* Wis. Stat. § 973.01(2)(b)8. Because Stewart also was convicted of felony fleeing at the same time, the maximum term of probation is increased by two years (one year for each felony conviction) for a total of five years. *See* § 973.09(2)(b). Stewart's eight-year term of probation is commuted to a five-year term. *See* § 973.09(2m).

*Banishment as a condition of*
*probation and extended supervision*

¶ 10. As a condition of his probation and a condition of his extended supervision, the trial court banished Stewart from Richmond township in Walworth county. Stewart complains that, given the facts and circumstances, the condition fails to meet the requirements that it be narrowly drawn and not unduly restrictive of his liberties.

¶ 11. Sentencing courts have wide discretion and may impose any conditions of probation or supervision that appear to be reasonable and appropriate. *State v. Nienhardt*, 196 Wis. 2d 161, 167, 537 N.W.2d 123 (Ct. App. 1995); *State v. Koenig*, 2003 WI App 12, ¶ 7, 259 Wis. 2d 833, 656 N.W.2d 499. We review such conditions under the erroneous exercise of discretion standard to determine their validity and reasonableness measured by how well they serve their objectives: rehabilitation and protection of the state and community interest. *Nienhardt*, 196 Wis. 2d at 167; *Koenig*, 259 Wis. 2d 833, ¶ 7.

¶ 12. The conditions may impinge upon constitutional rights as long as they are not overly broad and are reasonably related to the person's rehabilitation. *Nienhardt*, 196 Wis. 2d at 168. Convicted felons do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime. *State v. Oakley*, 2001 WI 103, ¶ 17, 245 Wis. 2d 447, 629 N.W.2d 200. Whether a particular condition violates a defendant's constitutional right is a question of law which this court reviews de novo. *State v. Lo*, 228 Wis. 2d 531, 534, 599 N.W.2d 659 (Ct. App. 1999).

¶ 13. Geographical limitations, while restricting a defendant's rights to travel and associate, are not per se unconstitutional. *See Predick v. O'Connor*, 2003 WI App 46, ¶ 18, 260 Wis. 2d 323, 660 N.W.2d 1; *Nienhardt*, 196 Wis. 2d at 168–69 (declining to address the defendant's specific constitutional claims, but indicating that the geographical limitation in that case did not impermissibly infringe on her constitutional rights). Each case must be analyzed on its own facts, circumstances and total atmosphere to determine whether the geographic restriction is narrowly drawn. *Predick*, 260 Wis. 2d 323, ¶ 18.

¶ 14. The facts underlying the crimes charged in Stewart's other criminal cases formed the basis for the trial court's decision to impose a geographic restriction as a condition of Stewart's probation and extended supervision. The record shows that in 2003 Stewart made several telephone calls of a sexual nature to one of his neighbors. On numerous occasions, he also stood naked in the open doorway to his barn and masturbated. Several neighbors observed this behavior. He was also observed in the town of Sugar Creek sitting in

a parked car with the driver's side door open. He was naked and possibly masturbating at the time. The record also demonstrates that he had a history of abusing his wife and children.

¶ 15. In imposing the geographical limitation, the trial court was concerned with protecting the victims of his crimes:

> He is not to enter Richmond Township, Walworth County, Wisconsin. I do agree with the state that this is an example of where he has literally tormented the people in close relationship in that township and especially that house repeatedly. Now, I know he committed one of his offenses in Sugar Creek Township but against people who have connection with Richmond. They deserve protection. This is an extraordinary case where he did it again and again and again as the history shows. The charges that he's charged with are only the tip of the iceberg. They're the—for the type of conduct he was forcing these women to give into; and if you read their letters, they'll—they'll point out that he did it again and again. And they tried to ignore him, and they didn't want to make him mad and, et cetera, but he just got—kept getting worse and worse.
>
> I believe that I'm fulfilling a function of the protection of the community by keeping him out of Richmond where these particular victims were and he seemed to take a perverse delight in going after these particular neighbors of his.
>
> As I say, I don't think that they can have real peace of mind unless they know that at least he's outlawed from that particular township, and the area is narrow and small enough where it does not in my mind infringe upon any major constitutional right of his.

In its oral ruling following the postconviction motion hearing, the trial court upheld the banishment condi-

tion. The court explained that it provided the victims with some peace of mind, offering them a margin of territorial safety.

██

¶ 16. While the geographical limitation certainly promotes the purposes of protecting the victims in this case and rehabilitating Stewart, it is broader than necessary to accomplish those purposes. One incident took place in the town of Sugar Creek; however, the record reveals that the majority of Stewart's inappropriate, criminal and threatening behavior took place in and around his home. It was directed towards his wife,[2] children and neighbors and not the Richmond township community at large. The court could have fashioned a more narrowly drawn condition banishing Stewart from his residence and the immediate neighborhood surrounding it.

¶ 17. Further, the no contact condition of his probation and supervision, a more narrowly drawn restriction on Stewart, already offers protection to his victims and facilitates his rehabilitation. As part of the no contact condition, the court ordered that Stewart "is to have absolutely no contact with the victims, their residences, or immediate family; and that means he doesn't contact them personally, he doesn't write them, he doesn't telephone them, he doesn't e-mail them, and he doesn't send anything or ask any third party to communicate to them." Thus, the victims Stewart targeted are protected because the no contact condition prevents Stewart from having any communication whatsoever with them, their families and their residences. The condition aids in Stewart's rehabilitation

---

[2] According to the trial court at the time of sentencing, Stewart and his wife were in the process of a divorce.

because it removes him from the temptation of engaging in the same types of conduct towards his victims. In light of these safeguards, there is no reason why Stewart should be precluded from entering or residing in the entire Richmond township.

¶ 18. The State attempts to draw comparisons with *Nienhardt, Predick,* and *State v. Simonetto,* 2000 WI App 17, 232 Wis. 2d 315, 606 N.W.2d 275, cases in which this court upheld banishment provisions. *See Nienhardt,* 196 Wis. 2d at 164–66 (upholding a condition of probation banishing the defendant from the city of Cedarburg); *Predick,* 260 Wis. 2d 323, ¶ 1 (upholding an order banishing defendant from Walworth county); *Simonetto,* 232 Wis. 2d 315, ¶¶ 1, 3 (upholding a condition of probation prohibiting the defendant from going "where children may congregate"). We are not persuaded that these cases dictate an affirmance here.

¶ 19. First, we remind the State that whether a geographical limitation is narrowly drawn is determined by looking at the specific facts and circumstances of each case. *See Predick,* 260 Wis. 2d 323, ¶ 18. As the trial court itself stated, "I am well aware that the appellate court's decision in upholding [the trial court's] barring of O'Connor in the *Predick* case from Walworth County was not a carte blanche invitation to do it again. The appellate court made it clear that the *Predick* facts were extraordinary . . . ."

¶ 20. Second, unlike those cases, the facts and circumstances of this case demonstrate that the prohibition on Stewart's entering Richmond township was overbroad and unduly restrictive of his liberties. Unlike the other cases, the dual goals of rehabilitation and protection of the community interest are already functionally accomplished by a more narrowly drawn no contact condition. *Predick,* 260 Wis. 2d 323, ¶ 2 (noting

that the trial court had attempted to implement more narrowly tailored orders, including several no contact orders, but that they had failed to prevent the defendant's continuous harassment); *Nienhardt*, 196 Wis. 2d at 165–66 (indicating that the court had imposed a no contact order, but not discussing the terms of the order or whether it would sufficiently protect the victim or rehabilitate the defendant); *Simonetto*, 232 Wis. 2d 315, ¶¶ 7, 8 (noting that the defendant, a "nascent child molester" with an extensive and graphic collection of child pornography, was not someone "who should be hanging around parks, malls and beaches"). Further, unlike the defendants in *Predick* and *Nienhardt*, Stewart was an established, longtime resident of Richmond township.[3]

¶ 21. Given the facts and circumstances of this case, we conclude that the condition of probation and condition of extended supervision banishing Stewart from Richmond township is not narrowly drawn and is unduly restrictive of Stewart's liberties. Although the geographic restriction does serve the purposes of probation and extended supervision, it is broader than necessary to achieve those purposes.

*Conclusion*

¶ 22. In sum, we hold that WIS. STAT. § 973.09(2)(b) expressly provides that the maximum term of probation for Class B-H felonies is linked to the maximum term of

---

[3] Contrary to the State's assertions, it does not matter that Stewart is not likely to be awarded the family home in the divorce proceedings and it does not matter that Stewart will be in prison for the next several years. The fact remains that Stewart lived in Richmond township for several years prior to his convictions.

confinement for the crimes in those classes. Stewart's eight-year term of probation is commuted to a term of five years. We also hold that the condition of probation and extended supervision banishing Stewart from Richmond township is not narrowly drawn and is unduly restrictive of his liberties. On remand, the trial court shall enter amended judgments of conviction consistent with this opinion.

*By the Court.*—Judgments and orders reversed and cause remanded with directions.