COURT OF APPEALS
DECISION
DATED AND FILED

July 29, 2020

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP118-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2019CM347**

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

LEONARD D. KACHINSKY,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Winnebago County: GUY D. DUTCHER, Judge. *Affirmed*.

¶1     DAVIS, J.[1]     Leonard D. Kachinsky appeals from an amended judgment of conviction finding him guilty of violating a harassment injunction and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

from an order denying his postconviction motion. We conclude that Kachinsky's prosecution comported with due process; that sufficient evidence supported the jury verdict; and that the trial court properly exercised its discretion to impose probation conditions that were reasonable and appropriate for Kachinsky's rehabilitation and the protection of society (and, specifically, the petitioner). Accordingly, we affirm.

## BACKGROUND

¶2 A harassment injunction was issued against Kachinsky on June 19, 2018, as to petitioner M.B. *See* WIS. STAT. § 813.125. At that time, Kachinsky was a municipal court judge in the Village of Fox Crossing and M.B. was the municipal court manager. The injunction order states:

> All communications between [Kachinsky] and [M.B.] shall be limited to what is necessary to perform the functions of the Village of Fox Crossing Municipal Court. Communications related to the personal relationship or personal rapport between [Kachinsky] and [M.B.] are not included in the operation of the court and are prohibited under this section.

Kachinsky was present at the injunction hearing and knew about its issuance.

¶3 On July 2, 2018, M.B. arrived at work and saw a poster hanging a few feet from her desk. The poster displayed a portion of the town's personnel manual concerning sexual harassment, with the word "sexual" highlighted each time it appeared. Although M.B. and Kachinsky rarely, if ever, worked in the office at the same time, M.B. did share the office with Kachinsky. Therefore, M.B. assumed that Kachinsky had hung the poster (the parties later stipulated to this). M.B. believed that this violated the injunction, and she alerted law

enforcement. Kachinsky was arrested that same day, questioned about the poster,[2] and released the following day, July 3. Coincidentally, that same day the Wisconsin Supreme Court issued an order suspending Kachinsky from his municipal court duties until further notice. *See Wisconsin Judicial Comm'n v. Kachinsky*, No. 2018AP628-J, unpublished slip op. ¶¶1-2 (WI July 9, 2019) (discussing the July 3, 2018 order).

¶4     One week later, the State charged Kachinsky with stalking and two counts of knowingly violating the harassment injunction. *Id.*, ¶60. The latter two charges, one of which related to the sexual harassment poster, were dismissed without prejudice; the stalking charge went to trial in December 2018, and Kachinsky was acquitted. *Id.*, ¶¶57-60. In April 2019, after Kachinsky sent two emails to M.B., the State charged him with three counts of violating the injunction, including the previously dismissed charge relating to the poster.

¶5     A jury trial was held in September 2019. Kachinsky readily acknowledged that he had hung the poster near M.B.'s desk in order to "provide information which … [M.B. had] either forgotten, or didn't remember, or did not understand the significance of exactly what sexual harassment was, and that nothing had gone on [that], as much as [M.B.] might be annoyed by it, was sexual harassment [by Kachinsky towards M.B.]." Kachinsky claimed that this communication was necessary to the functioning of the court because it related to settlement negotiations with the Village to sever his employment; these had

---

[2] It is possible that law enforcement questioned Kachinsky some time after he was released (the transcript is not clear on this point). For the purpose of this appeal, the only fact of relevance is that Kachinsky provided a statement to law enforcement about the July 2, 2018 incident.

deadlocked over the Village's refusal to acknowledge that he had not sexually harassed M.B. The jury apparently rejected this argument, as Kachinsky was found guilty on this count.

¶6      The court immediately held a sentencing hearing. The court imposed but stayed a jail sentence of six months and ordered one year's probation. As a condition of probation, the court prohibited Kachinsky from posting on social media and from entering the Fox Crossing municipal building, where M.B. worked (by that point, Kachinsky's term as municipal court judge had ended, so he did not work in the building).[3] In January 2020, the trial court denied Kachinsky's postconviction motion. Other portions of the testimony and evidence from those proceedings will be discussed below, where relevant to our analysis.

## DISCUSSION

¶7      Kachinsky raises three issues on appeal. He first claims that the injunction is ambiguous as to whether it applied to the conduct at issue, in violation of his due process rights. Second, he claims that the evidence was insufficient for a jury to find that he violated the injunction. Lastly, he claims that the trial court erroneously exercised its discretion in imposing probation conditions—in particular, the conditions barring any social media postings and prohibiting him from entering the Fox Crossing municipal building. We reject these arguments for the reasons explained below.

---

[3] As a further condition, the court imposed seven days of jail time, with two days' credit given for time previously served.

¶8     Kachinsky's due process argument is that the injunction is ambiguous and vague. As an initial matter, any argument that the injunction is *facially invalid* on such grounds cannot be considered at all. This is because we have explicitly held "that a person convicted of violating a harassment injunction contrary to [WIS. STAT. §] 813.125 … may not collaterally attack the validity of the underlying injunction in a subsequent criminal prosecution for its violation." *State v. Bouzek*, 168 Wis. 2d 642, 643, 484 N.W.2d 362 (Ct. App. 1992).

¶9     Acknowledging this point, Kachinsky asserts that his vagueness challenge is only to "the order as applied to the facts of this case." Kachinsky's apparent position is that the order is not sufficiently clear so as to inform him that hanging the poster would violate the injunction. To the extent this argument is not simply another form of collateral attack on the injunction itself, it is laid to rest by the requirement, necessary for a finding of guilt, that Kachinsky actually knew that his conduct violated the injunction. *See State v. Sveum*, 2002 WI App 105, ¶24, 254 Wis. 2d 868, 648 N.W.2d 496.[4] Whether Kachinsky had fair notice of what was prohibited in any given situation was expressly made part of the factual inquiry put to the jury by way of specific language in the verdict form (and accompanying instructions) that allowed the jury to convict only if it found, beyond a reasonable doubt, that Kachinsky "knowingly" violated the injunction.

---

[4] As noted in *State v. Sveum*, 2002 WI App 105, ¶24 & n.12, 254 Wis. 2d 868, 648 N.W.2d 496, there appears to be an open question as to whether the harassment injunction statute requires a showing that the defendant knew that the conduct at issue violated the injunction. Because the trial court instructed the jury that any violation must be "knowing," and the verdict form reflected that requirement, we need not address whether that is, in fact, a required element as either a matter of state law or due process. Here, the instruction and verdict form's requirement that there be a "knowing violation" necessarily eliminates any due process concern that the injunction is unconstitutionally vague and ambiguous "as applied" to Kachinsky's conduct in this specific instance.

Indeed, in his argument to the jury, Kachinsky's counsel repeatedly pressed the point that the State had not met its burden to show that Kachinsky knew that his conduct was a violation. The jury disagreed, and its verdict necessarily establishes beyond a reasonable doubt that Kachinsky fully understood that the injunction prohibited the conduct at issue. His argument that the injunction violates due process "as applied" therefore fails.

¶10    This leads to Kachinsky's second argument: that the evidence was insufficient to support the jury's finding of a knowing violation. Our review of this issue is highly deferential: the jury is the ultimate arbiter of witness credibility and evidentiary weight, and we will not reverse a conviction "unless the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." **State v. Poellinger**, 153 Wis. 2d 493, 501, 503-504, 451 N.W.2d 752 (1990).

¶11    Applying this standard, we find the evidence sufficient to support Kachinsky's conviction. Contrary to Kachinsky's assertion, the evidence overwhelmingly demonstrated that the sexual harassment poster was not a "communication[] … necessary to perform the functions of" the court; that Kachinsky knew this to be the case; and that consequently, Kachinsky intentionally violated the injunction by posting it. In fact, there is little evidence supporting Kachinsky's position that he believed the poster related to M.B.'s official duties as court manager. M.B. testified that the poster "doesn't have anything to do with the operation of my job, or the court." According to the detective who interviewed Kachinsky after his arrest, Kachinsky stated that he highlighted and hung the poster because it related to negotiations to which he was a party, concerning M.B.:

6

> [Kachinsky] had been in negotiations to resolve some … civil court cases that he had with the Village of Fox Crossing, and he was concerned and demanding that the term "sexual harassment" be removed from those before any settlement that would be reached. He wanted it not to stipulate that it was sexual harassment because he did not feel what was going on met the requirements of sexual harassment.
>
> ….
>
> He had told us that … they had come to an impasse in the negotiations for the civil litigation, and … I believe he stated he wanted to display continued resolve.

¶12 The State also introduced Kachinsky's written response to the Wisconsin Supreme Court's July 3, 2018 order prohibiting him from serving as judge; Kachinsky's explanation to the court supports the detective's testimony:

> [A piece of paper] which I posted at eye level[] was a copy of Chapter 27 of the Village Personnel Manual. It defined what sexual harassment was. I highlighted certain words on the document to emphasize the idea that sexual advances or creation of a sex-charged atmosphere was required. [M.B.] has never alleged any conduct by me that constitutes sexual harassment under the definition. However, she insists that she is a victim of sexual harassment. This proved to be a problem in negotiations with the Village. *By posting Chapter 27, I wanted to subtlety suggest to* [M.B.] *that she might want to reassess her thinking.*

(Emphasis added.)

¶13 Together, this evidence showed, at best, that Kachinsky's purpose in hanging the poster was to assist in his personal negotiations with the Village; at worst, that it was a calculated attempt to continue his previous pattern of bestowing unwanted attention on M.B. while maintaining plausible deniability for doing so. Either way, the jury could have reasonably concluded that this was a communication that Kachinsky knew was not necessary for the functioning of his court.

¶14 Finally, there is Kachinsky's testimony itself. Although Kachinsky discussed the poster's relevance to his negotiations with the Village (as quoted in the previous section), he also asserted that he hung the poster merely to educate his employee on village policies and handbooks. This latter testimony, however, was belied by his admission that he never posted any other portion of the Fox Crossing personnel manual. Kachinsky further acknowledged that in any case, there is a human resources department for such functions. The jury also heard evidence that Kachinsky is an experienced attorney: he has practiced law since 1978 and is confident in his ability to interpret court orders such as the one applying to himself. This testimony further bolstered the jury's finding that Kachinsky's violation of the injunction was knowing and not inadvertent. The verdict was amply supported.

¶15 Kachinsky's final challenge is to the terms of his probation: that he cannot post on social media (in particular, on Facebook) and that he cannot enter the municipal building in which M.B. works.[5] Once again, our deference to the trial court is substantial. Where a court imposes but stays a sentence and, as an alternative, orders probation, it "may impose any conditions which appear to be reasonable and appropriate." WIS. STAT. § 973.09(1)(a). "Reasonable and

---

[5] Kachinsky also takes issue with various statements made by the trial court, which, he argues, demonstrate that he was sentenced based on inaccurate information. For example, Kachinsky disputes the trial court's statement that M.B. was "not overreacting" to Kachinsky's conduct, and he argues that the trial court (wrongly) believed that Kachinsky was "grooming" M.B. for an extramarital affair. From our review of the record, however, it does not appear that that the trial court misstated any relevant facts but merely, at times, expressed its own inferences from the evidence at trial and other facts known to it from earlier proceedings. In any event, Kachinsky does not show, and we cannot independently identify, actual reliance by the trial court on any facts Kachinsky deems inaccurate. *See State v. Tiepelman*, 2006 WI 66, ¶26, 291 Wis. 2d 179, 717 N.W.2d 1 (defendant requesting resentencing must show that the court actually relied on inaccurate information at sentencing).

appropriate conditions of probation are those that rehabilitate the offender and protect the interests of society." *State v. Oakley*, 2000 WI 37, ¶8, 234 Wis. 2d 528, 609 N.W.2d 786. Probation conditions may also impinge upon a defendant's constitutional rights "as long as they are not overly broad and are reasonably related to the person's rehabilitation." *State v. Stewart*, 2006 WI App 67, ¶12, 291 Wis. 2d 480, 713 N.W.2d 165. Our review is for an erroneous exercise of discretion, *id.*, ¶11, meaning we will uphold a condition of probation where the sentencing court "examine[d] the relevant facts, applie[d] a proper standard of law, use[d] a demonstrative rational process, and reache[d] a conclusion that a reasonable judge could reach," *see State v. Olson*, 222 Wis. 2d 283, 293, 588 N.W.2d 256 (citation omitted).

¶16    Before turning to the sentencing proceedings, we note that the background for the particular conditions imposed was not just the conduct underlying the one charge for which Kachinsky was convicted, but a series of other incidents, charges, trials, and disciplinary proceedings concerning Kachinsky's interactions with, and conduct towards, M.B. The trial court stated that it was not sentencing Kachinsky based on past offenses, and Kachinsky does not argue otherwise on appeal. On the other hand, a sentencing court is free to consider all relevant information bearing on the appropriate sentence, even those "facts related to offenses for which the defendant has been acquitted." *State v. Frey*, 2012 WI 99, ¶¶45, 47, 343 Wis. 2d 358, 817 N.W.2d 436 (citation omitted). Here the trial court presided at the previous trial at which Kachinsky was acquitted of stalking M.B.; the court was thus "very familiar with the circumstances that are present" in what it viewed as "an extension of that process," stating, "I'm not going to forget the backdrop of this situation and of this relationship." The trial court also had the benefit of the Wisconsin Supreme Court opinion, following a

9

judicial conduct panel inquiry, suspending Kachinsky from further work as a judge. *See **Kachinsky***, No. 2018AP628-J (detailing instances of problematic and unprofessional behavior toward M.B., which resulted in the issuance of the harassment injunction and Kachinsky's later prosecution for felony stalking). These extraneous sources of information will be discussed below as relevant to the trial court's determination that Kachinsky required meaningful deterrents *for his own benefit*, in order to break a years-long "obsession" with M.B. that had, up to that point, been stubbornly impervious to outside intervention.

¶17   Prior to sentencing, M.B. gave a statement. She framed her history with Kachinsky as "a living nightmare." In her view, Kachinsky would not or could not stop harassing her:

> This man won't leave me alone, and it's clear. And nothing will stop him. Absolutely nothing will stop him, and it doesn't matter who the authority is or it's just me. I mean, when the man got out of jail, the first one he was e-mailing was me. I just don't understand. Just please leave me alone. That's all I've asked since the beginning. I've asked it to be professional for two-and-a-half years, and, clearly, that cannot be the case. And he has been suspended and still will be suspended for the next two years.[6] And he still won't stop.
>
> ….
>
> And everything I've heard in two-and-a-half years from this man was, "Well, you are not interpreting the way," and "I'm an attorney," and "This is how it should be," and "I'm the Judge. This is how it should be." And I went through hell listening to this man. And just leave me alone. So, to

---

[6] On July 9, 2019, the Wisconsin Supreme Court suspended Kachinsky from being eligible to serve as reserve municipal judge; the suspension was for a period of three years and began on July 3, 2018, the date of the initial order prohibiting him from acting as judge. ***Wisconsin Judicial Comm'n v. Kachinsky***, No. 2018AP628-J, unpublished slip op. ¶¶1-2 (WI July 9, 2019).

end it all, I am begging you to just do something that he will leave me alone. That's all I ask.

M.B. also complained about Kachinsky's Facebook posts: "One of the things that you don't know, Judge, is he's still posting on Facebook. He doesn't quit. He—anything to get a jab at me, or to have contact with me …." In particular, M.B. was upset by an August 2019 Facebook post that did not reference her by name but that she (and, later, the trial court) determined could only refer to her.[7]

¶18 Kachinsky made a statement as well. He said that he was "sorry for all that's happened" and that that it was "[m]y fault … to a very large extent." Kachinsky, however, also minimized his role in the conflict between him and M.B., framing it as "a nasty personnel situation" involving "problems in the way it was handled by both sides" and "contributing factors … beyond my control" that "made it worse." He stated, "I felt bad for a long time, and I still do about [M.B.] and her reaction to this stuff," but he also stated, "[D]uring the trial, my feeling was, and it still is, it was an overreaction [by M.B.]."

¶19 To begin, the trial court rejected Kachinsky's gloss on the conflict:

I'm going to start by the woman that you have pretty much terrorized for the last two years. And, no. She is not overreacting….

….

[It] is not an overreaction, not when somebody repeatedly asks that you discontinue the incessant behavior that … has led a lot of pretty powerful bodies to admonish you ….

---

[7] That post referred to "personnel problems" and stated, "[O]ne former coworker claimed it made her afraid to be in the same room as me."

The court then discussed the efforts of various entities, ranging from the Village to the Wisconsin Supreme Court, to halt Kachinsky's problematic conduct toward M.B. The court concluded that Kachinsky had become "obsessed" with M.B. and "obsessed" with his former position as municipal court judge, and "those two commingled … to create a perfect storm, where you weren't going to listen to anybody, including the Wisconsin Supreme Court. And you weren't going to let anybody tell you who it is you could interact with and how." The trial court also expressed disbelief that Kachinsky was still making Facebook posts about M.B.:

> [A]fter you got a pass in December [by being acquitted of the stalking charge], after you had your career placed on the table, your ability to practice law, let alone, be a Municipal Court Judge, and you got a pass, you would have thought that you would have treated [M.B.] and any reference to this situation as if she had passed away and no longer existed, and this was history that you did not want to revisit because you got a pass. But you are still making Facebook posts about this situation and about her?

The court concluded that under the circumstances, any sentence more lenient than probation would be "judicial misconduct": only by imposing probation with strict and meaningful conditions could the trial court possibly "break that chain" of "obsession with [M.B.]," "because nothing anybody else has done in [the] past has gotten the message through to you." Later, at the postconviction hearing, the court reiterated that the social media prohibition was not just for M.B.'s protection but was also "the only way to disengage Mr. Kachinsky from the behavior that he has been involved with on, virtually, an incessant basis … because he knows no boundaries."

¶20 We assume that the conditions at issue here (no posting on social media, no entering the premises of the municipal building where M.B. works) may implicate Kachinsky's constitutional rights. Nonetheless, even under the stricter

standard applicable to such conditions, we find them permissible. Given all the facts and evidence before it, it was certainly reasonable for the trial court to decide that these probation conditions were a necessary rehabilitative mechanism, to detach Kachinsky from his ongoing obsession with M.B. *See Stewart*, 291 Wis. 2d 480, ¶12. In particular, Kachinsky seemed incapable of refraining from posting about M.B. online, so the trial court reasonably concluded that it was necessary to designate a period in which all social media posting was prohibited. In addition, by prohibiting Kachinsky from accessing the building in which he used to work (and where M.B. still works), the trial court was steering Kachinsky away from any temptation to repeat his problematic behavior.

¶21 In light of all the circumstances, we also find that these conditions are not overly broad. *See id.* Both are for a period of only one year. The social media condition only prohibits posting; Kachinsky may still browse social media, and he may still communicate with friends and family through any other method. And although it may, at times, be inconvenient for Kachinsky not to be able to enter the municipal building, he no longer works there. This prohibition appears to have almost no impact on Kachinsky's day-to-day life. On those occasions where Kachinsky has need for, say, a cat license (to use the example he cited to the trial court and in his briefing to us), he can arrange for someone else to get that from the building.

¶22 Having determined that these conditions are a permissible impingement on Kachinsky's constitutional rights, we further conclude that there was ample basis for the trial court's discretionary conclusion that these were "[r]easonable and appropriate conditions … [to] rehabilitate the offender and protect the interests of society." *See Oakley*, 234 Wis. 2d 528, ¶8. In addition to the rehabilitative aspect discussed above, these conditions were designed to afford

M.B. peace of mind—to end her years-long "living nightmare." With all the relevant facts before it from multiple trials and proceedings, the trial court did not erroneously exercise its discretion in finding these measures a reasonable means of protecting M.B. from Kachinsky. We affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.