**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**January 3, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP900-CR**

Cir. Ct. No. **2019CF811**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT II**

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

THEODORE J. POLCZYNSKI,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Waukesha County: PAUL F. REILLY, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Theodore Polczynski appeals from a judgment of conviction and an order of the circuit court. He contends the court erroneously

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

exercised its discretion in ordering probation conditions restricting his ability to own a business or operate as a general contractor; specifically, he asserts the conditions are not "reasonable and appropriate." For the following reasons, we disagree and affirm.

## *Background*

¶2 Polczynski was charged with two felony counts of theft by contractor. According to the complaint, in 2018, he received $11,000 from one couple and $12,500 from another individual to construct a garage for each set of victims. He deposited the money he received to construct the garages into a bank account for one of his businesses and used those funds for other, unrelated purposes. He never constructed either garage or returned the victims' money.

¶3 Polczynski pled no contest to two misdemeanor counts of theft of movable property under $2,500. At the plea hearing, he acknowledged through his attorney that the court could rely on the criminal complaint as providing the factual basis to support his pleas, and the court determined the complaint provided a sufficient factual basis. A second felony case against Polczynski was dismissed.[2]

¶4 At sentencing, the victim in the dismissed case stated that Polczynski's criminal conduct was "not a one time … thing," Polczynski is "a

---

[2] At the sentencing hearing, a question arose as to whether the second felony case was dismissed outright or dismissed and read in. The plea hearing transcript clearly indicates it was dismissed and read in. At the sentencing hearing, however, the State agreed and the court ordered—upon Polczynski's agreement to pay the remaining restitution related to the victim in the second case—that the dismissal of that case be outright. Ultimately, that outright/read-in nuance is irrelevant to our decision.

habitual criminal," and he deserves "to do some jail time for this." This victim also expressed that "this is an example-type case" and indicated he "hope[d] that there [are] some restrictions on [Polczynski] being able to become a contractor again and allowing an opportunity to be able to victimize" others.

¶5     The wife of the victimized couple who gave Polczynski the $11,000 called him "truly a con artist and a thief." She stated that after giving him the money and signing the contract for Polczynski to build a garage, she and her husband "texted him hundreds if not thousands of times. [They] called him. Never did he ever pick up the phone." She continued:

> On the rare chance where he might respond back to us, it was always an excuse…. He never, ever came back to see us again.
>
> … [A]fter six months of doing this with him, we hired another contractor. We had to borrow more money to finish our garage.
>
> ….
>
> … [W]e contacted the police and had them go to Ted's house, and [he] said he would get the job done, which he never did. Now it's been four years and Ted just … continues to play his game.… [E]very time we go to court and it's time for sentencing or for a jury trial, he dismisses his attorney and he start[s] again with the new attorney, and it takes another eight months.
>
> He did that four times in this case. Not only does he do that, but every time he gets a suit filed against him, he opens a new business under a different name and cheats someone else out of money…. [I]t's just gone on far too long. He knows how to work the system.
>
> The whole time he's doing this, he lives in a million dollar home. I live in a 1,500-square foot house….
>
> … He's going to continue to prey on innocent, hard-working people. So I really ask you that you sentence him to the stiffest punishment you possibly can ….

¶6      In his victim-impact statement for the circuit court, the husband of the victimized couple indicated that Polczynski's conduct "caused a tremendous amount of stress on my family and myself." He added that they had spent

> countless hours trying to have the contract completed by Mr[.] Polczynski. When it became obvious he had no intention of completing the job, we spent even more time trying to get a refund. We don't have the money for an attorney to bring a civil suit.
>
> We have since begun the garage construction with another contractor, but have needed to use credit cards and borrowed money from relatives to do so.

¶7      The victim who gave Polczynski the $12,500 indicated in his written victim-impact statement that he had to hire an attorney for over $4,000 to file a lawsuit against Polczynski related to his case, borrow money against his 401(k) to eventually get his garage built, pay back over $3,000 in interest on the loan, and take time off from work for court appearances.

¶8      The prosecutor spoke of subcontractors who did not get paid what was owed them by Polczynski. She explained that Polczynski had "different business names at [multiple] different banks" and would "put the money back and forth into different business accounts and transfer it back and forth by check." She added:

> I also think probation is necessary to ensure that he's not doing this for at least the next, you know, 18 months, what the State is recommending, that he's not trying to take people's money and say that he's going to build something and then never does it.
>
> You know, these are property crimes, and they're not necessarily violent, but they have a significant impact on people, especially people … like all of us who don't have $11,000 … just to spare and not get what they're asking for and then having to take out more money in order to actually get it done. These are large amounts of money for all of us.

4

> The defendant just took it and did whatever he wanted with it, paying off other loans, paying law firms, and not doing what he was contracted to do.

¶9 Counsel for Polczynski explained that Polczynski experienced financial hardship around the time of the offenses in this case, leading him to conduct himself as he did and misuse the funds. Counsel stated that "it would be a mistake for us to restrict his ability to work and to earn a living for his family in the only area that he's really worked in." Counsel requested the circuit court order probation "with a significant amount of supervision involved with [Polczynski] having to report in a way that is meaningful for his business and the way this business operates we can be assured that this is not going to occur again." Counsel further expressed to the court that "this was a very, very complicated case," and "in looking at the records[,] … there are many layers to it."

¶10 Polczynski spoke, stating he was "sorry," but he then appeared to fault one set of victims for not picking up checks he had written as his way of resolving the matter. Related to the victim in the dismissed case, who was a subcontractor on a project of his, Polczynski stated, "Obviously, I wish I would've done something a little different than contest Rob's material invoices. You know, those seem to be, really, out of line at the time. I guess I should've just bid it up and just paid him at the time and just moved on." He ended by stating that at the time, handling matters as he did "looked like it was the right thing to do. Now, obviously, I realize it wasn't."

¶11 The circuit court spoke next:

> You don't get it, Mr. Polczynski. Even now you're making excuses saying you thought you did the right thing. You'll say that tomorrow….
>
> You don't even really seem to acknowledge that you committed a crime. You're saying you were doing the

right thing by robbing Peter to pay Paul. You know, this is a crime like any other crime. You're a criminal, and I'm treating you as a criminal.

… [T]he facts in both of the complaints speak for themselves. Those facts were accepted at the time of the plea as being true and correct.

When I look to the way you handled this court system, you seem to handle it the same way you handle your customers, and that's to obfuscate and use every trick in the book that you can. You've had five attorneys in this matter…. [A]ll breakdown in communications, and it all happened close to the time you had to face the music.…

… I will follow [the recommendations] in some respect, but I'll tell you right now, one of the conditions is you may not be a general contractor any longer.

You will have to divest yourself of any business. You're going to be an employee, not a person who takes anyone else's money other than from your own employer, because you're not to be trusted. It's, obviously, clearly evident from all the facts in this case that you abuse other people for your own benefit.

The circuit court expressed that it was also

important to send a message to other general contractors who skirt the lines and take one person's money and use it for something else. In this case, it looks like you used it for yourself in many of the instances rather than need it for someone else's project.

… I don't know what it will take for you to get your mind set around the fact that you need to not steal from people, because that's what you're doing and you have repeatedly been doing.

Nothing I've heard from you today indicates that you have any intent to do otherwise.

The circuit court also emphasized the need to punish Polczynski "because to me that's the only thing I can see that might wake you up."

6

¶12   The circuit court ordered nine months of jail time on each count, consecutive, but stayed those terms and instead placed Polczynski on two years of probation with various conditions. Two of the probation conditions are relevant to this appeal: (1) "No ownership interest in any business and agent must approve all employment activities" and (2) "[m]ay no longer be a general contractor."

¶13   Polczynski subsequently filed a letter motion asking that the circuit court amend the judgment of conviction to include "a 3-month period … to wind down or otherwise divest … current business interests" and to "[q]ualify the prohibition on business ownership to limit it to general contracting arena." The court amended the judgment of conviction to include the three-month wind-down period but otherwise denied the motion. Polczynski appeals.

## *Discussion*

¶14   Polczynski challenges the circuit court's probation conditions that he "have no ownership interest in any business and … no longer be a general contractor." He claims these conditions are not reasonable and appropriate. We disagree.

¶15   "Sentencing courts have wide discretion and may impose any conditions of probation … that appear to be reasonable and appropriate." *State v. Stewart*, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165; *see also* Wis. Stat. § 973.09(1)(a). We review a challenge to the conditions of probation "under the erroneous exercise of discretion standard to determine their validity and reasonableness measured by how well they serve their objectives: rehabilitation and protection of the state and community interest." *Stewart*, 291 Wis. 2d 480, ¶11.

¶16     Polczynski's main assertion on appeal is that instead of barring him from having an ownership interest in a business and/or operating as a general contractor, the circuit court should have instead chosen a "more narrowly drawn restriction[]," such as "the utilization of an independent third-party for the administration of all financial transactions with clients and the transparent reporting of these financial transactions through this independent third-party to the Department Agent administering Mr. Polczynski's sentence in this matter."

¶17     To begin, Polczynski did not present this alternative to the circuit court as an option for its consideration before, during, or even after the sentencing hearing. Second, even if he had presented it, Polczynski's alternative fails to be direct, simple and reliable. Additionally, he makes no suggestion as to who an appropriate "independent third-party" might be to perform "the administration of all financial transactions with clients" and through whom "the transparent reporting of these financial transactions" would go, much less who would pay for this third-party service.

¶18     Counsel for Polczynski expressed at sentencing that "this was a very, very complicated case," and "in looking at the records[,] … there are many layers to it." We suspect the circuit court may have viewed the case that way as well and imposed the conditions it did because it desired an uncomplicated and reliable means of ensuring Polczynski not only learned a lesson (i.e., rehabilitation) but also did not have an opportunity to steal from unsuspecting customers and subcontractors (i.e., protection of the state and community interest) while on probation. Prohibiting Polczynski from owning a business or acting as a general contractor while on probation achieves these goals and is particularly reasonable in light of the court's concern that because Polczynski failed to recognize and acknowledge his criminal wrongdoing, he would not take steps to prevent such

wrongdoing in the future. Moreover, the court did not have to stay its imposed sentence of nine months' confinement on each count, consecutive, and had it not stayed the sentence, Polczynski presumably would have not only been unable to run a business or function as a general contractor but also would have been excluded from all employment for the eighteen months he would have been confined. *See* **State v. Schwind**, 2019 WI 48, ¶31, 386 Wis. 2d 526, 926 N.W.2d 742 (recognizing that "an individual placed on probation is already receiving the discretionary privilege of the State's mercy, and cannot similarly argue that the failure to extend him [or her] more mercy is a failure to fairly administer justice"). Instead, the court took a more modest approach.

¶19    The circuit court also indicated it wanted to send a message to other general contractors who might be tempted to play fast and loose with their customers' and/or subcontractors' money and thereby harm them like Polczynski harmed the victims in this case (i.e., providing additional protection of the state and community interest). We certainly do not fault the court for wanting to send that message. The directness and sternness of the court's conditions should give Polczynski and other contractors with challenged ethics pause if they were to consider stealing from unsuspecting customers or subcontractors in the future.

¶20    We conclude the circuit court did not erroneously exercise its discretion in ordering the conditions of probation Polczynski challenges. The challenged conditions are reasonable and appropriate as they directly and

effectively address the court's understandable concerns and are sensibly geared toward rehabilitating Polczynski and protecting the state and community interest.[3]

> *By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[3] Polczynski also asserts the "sentence" imposed by the circuit court is unduly harsh and unconscionable; however, he challenges only the identified conditions of probation. Probation "is not a sentence; it is an alternative to sentencing." **State v. Schwind**, 2019 WI 48, ¶24, 386 Wis. 2d 526, 926 N.W.2d 742. "In lieu of imposing a criminal sentence, the legislature has chosen to allow sentencing courts to either withhold sentencing, or impose a sentence but stay its execution, and instead release the individual into the community subject to 'any conditions which appear to be reasonable and appropriate' to the court." **Id.** (citation omitted). The appropriate review here is whether the challenged conditions of probation are reasonable and appropriate, a matter we address above. That said, we nonetheless also conclude the challenged conditions of probation are not unduly harsh or unconscionable for the reasons identified in paragraphs seventeen and eighteen.