**2020 WI App 66**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP1642-CR

†Petition for Review filed

Complete Title of Case:

**STATE OF WISCONSIN,**

       **PLAINTIFF-RESPONDENT,**

    **V.**

**PETER J. KING, JR.,**

       **DEFENDANT-APPELLANT.†**

| | |
|---|---|
| Opinion Filed: | September 17, 2020 |
| Submitted on Briefs: | May 20, 2020 |

| | |
|---|---|
| JUDGES: | Fitzpatrick, P.J., Blanchard, and Nashold, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendant-appellant, the cause was submitted on the briefs of *Joseph N. Ehmann* and *Mark R. Thompson*, assistant state public defenders of Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sonya Bice Levinson*, assistant attorney general, and *Joshua L. Kaul*, attorney general. |

# COURT OF APPEALS
## DECISION
## DATED AND FILED

### September 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

---

**Appeal No.    2019AP1642-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2005CF498

**IN COURT OF APPEALS**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

PETER J. KING, JR.,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sauk County: WENDY J.N. KLICKO, Judge. *Affirmed.*

Before Fitzpatrick, P.J., Blanchard, and Nashold, JJ.

¶1    FITZPATRICK, P.J.   Peter J. King, Jr., was convicted in the Sauk County Circuit Court of using a computer to facilitate a child sex crime and child enticement.  The circuit court imposed a bifurcated imprisonment sentence on the count of using a computer to facilitate a child sex crime.  The circuit court also

imposed conditions of extended supervision which restricted King's access to the internet, and King's extended supervision was twice revoked for violating those conditions.

¶2    On the child enticement count, King received a probation disposition of ten years, which began after completion of King's sentence for the use of a computer to facilitate a child sex crime. King's conditions of probation imposed by the circuit court included restrictions on his access to the internet. King's probation was revoked for, among other reasons, violating those court-ordered conditions that restricted his access to the internet. After revocation, the circuit court imposed a bifurcated imprisonment sentence for the child enticement count. When King is released to extended supervision, he will be subject to court-ordered conditions of extended supervision that restrict his access to the internet. Those court-ordered extended supervision conditions are a subject of this appeal.

¶3    King contends, based on the U.S. Supreme Court's opinion in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), that the court-ordered extended supervision conditions restricting his access to the internet are overly broad and, as a result, his First Amendment rights to freedom of speech and freedom of association are improperly infringed. King also argues that the circuit court erred in denying his motion for resentencing and a reduction in his imprisonment sentence on the child enticement conviction because the Court's opinion in *Packingham* is a "new factor" that was overlooked at sentencing.

¶4    For the reasons set forth below, we conclude that the extended supervision conditions imposed by the circuit court that will restrict King's access to the internet are not overly broad and do not improperly infringe King's First Amendment rights to freedom of speech and freedom of association. We also

conclude that the Court's opinion in *Packingham* is not a new factor requiring resentencing on the child enticement count. Accordingly, we affirm the rulings of the circuit court.

**BACKGROUND**

¶5    The following material facts are not disputed for purposes of this appeal.

¶6    In 2005, King communicated online with a person King believed to be a fifteen-year-old girl. That person was actually a Sauk Prairie police officer. King sent the "girl" sexually explicit messages online and made plans with the "girl" to meet her, and her fourteen-year-old friend, at a motel for purposes of having sexual intercourse with both minors. After King checked into the motel, King was arrested. Items in King's possession at the time of his arrest included liquor, condoms, and a camera. King was charged with counts of using a computer to facilitate a child sex crime and child enticement. *See* WIS. STAT. §§ 948.075(1) and 948.07(1) (2003-04).[1]

¶7    A jury found King guilty on both counts. In 2007, the circuit court imposed a bifurcated imprisonment sentence of four years of confinement and four years of extended supervision on the use of a computer to facilitate a child sex crime count. As one condition of King's extended supervision, the court ordered that King was to "[h]ave no use or access to a computer [or cell phone] that has internet access, either … at [King's] residence or place of employment [and] any

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

computer access is to be reported to [King's Department of Corrections (DOC) supervising] agent." *See* WIS. STAT. § 973.01(5).[2]  The circuit court granted an exception to those conditions in that King was permitted "[i]nternet access at a job center" or at a "place of business [at] which [King] wishes to work" to apply for employment, but only with permission of his DOC agent.  The circuit court imposed a consecutive disposition of ten years of probation, sentence withheld, on the child enticement conviction.

¶8     King challenged his convictions on appeal.  *See **State v. King***, No. 2008AP2673-CR, unpublished slip op. (WI App Nov. 12, 2009).   In that appeal, King argued that the circuit court erred by admitting evidence at trial of his prior conviction for sexual assault of a thirteen-year-old girl and that police found child pornography when they searched his residence during the investigation of those charges.  King's appeal was unsuccessful, and the rulings of the circuit court were affirmed.

¶9     King completed his initial confinement and, in December 2009, was released to extended supervision.  In October 2011, King's extended supervision was revoked because, according to a DOC report to the circuit court, King possessed "a Facebook account," "computers," "internet services," and "a blackberry phone" during extended supervision.  According to the report, King also viewed "sexual[ly] explicit websites" while on extended supervision.  After

---

[2] WISCONSIN STAT. § 973.01(5) provides that:   "Whenever the court imposes a bifurcated sentence … the court may impose conditions upon the term of extended supervision."

Separately, we note that only the court-ordered extended supervision conditions imposed by the circuit court in 2019 are at issue in this appeal.  Prior conditions of extended supervision and probation imposed on King are mentioned solely for background purposes.

serving a revocation sentence in prison, King was again released to extended supervision in May 2012.

¶10    In September 2013, King's extended supervision was revoked a second time, this time for, according to a DOC report to the circuit court, "being in possession of two computers, accessing the internet, possessing sexually explicit pictures, having a profile on sugardaddyforme.com, … possess[ing] a cellphone that had … internet capabilities and g[iving] his [DOC] agent false information." After serving his second revocation sentence in prison, King was again released to extended supervision, which he completed in July 2016.

¶11    Immediately thereafter, King began his ten-year term of probation for the child enticement conviction. King's access to the internet was restricted as a court-ordered condition of his probation in terms substantially similar to the previously-mentioned extended supervision conditions restricting his internet access. King again failed to comply with conditions of supervision, and his probation was revoked less than eighteen months after starting his probation term.[3]

¶12    The revocation report prepared for the circuit court by the DOC stated that, between July 2016 and July 2017, King violated his probation conditions through these pertinent actions, all without notifying his DOC agent: having an active Facebook account using a false name; accessing the internet regularly; and possessing a computer and cellphone. The report also stated that King lied to his probation agent about his social media access and, when taken

---

[3] To this point in the chronology, the term "circuit court" has referred to Judge James Evenson. From this point forward, the term "circuit court" refers to Judge Wendy Klicko.

into custody, refused to disclose to his probation agent the username and password for his computer. It was later determined that the computer was used by King for, among other things, communicating with a woman to whom King sent money and with whom King had established a "relationship" without DOC agent approval. At the probation revocation sentencing hearing, the State advised the circuit court that, after a forensic review of King's computer used during King's probation term, it was determined that King searched the internet using terms that included "teen." Also, pornography was found on the computer, but the State could not determine whether the persons in the pornographic images were under the age of eighteen.

¶13 At the May 2018 sentencing hearing, the circuit court imposed a bifurcated sentence of four years of initial confinement and four years of extended supervision. The court also imposed the following extended supervision condition: "no use or access to a computer [or cell phone] that has internet access, either be it at residence or place of employment [and] any computer access is to be reported to agent."

¶14 King filed a postconviction motion in the circuit court. Relying on *Packingham*, King argued that the circuit court must vacate the condition of his extended supervision restricting his access to the internet on the grounds that it violates his rights to freedom of speech and freedom of association under the First Amendment. King also requested that the circuit court, under its inherent authority and based upon the existence of a new factor, modify his sentence to two years of initial confinement and one year of extended supervision. King argued that the "new factor" was the Supreme Court's opinion in *Packingham*.

6

¶15    Following a hearing on King's motion, the circuit court denied King's request to vacate the condition of extended supervision that restricted his access to the internet. In an August 2019 Decision and Order, and based on input from the parties, the court modified the extended supervision condition regarding King's access to the internet to provide as follows:

> 1. The defendant may possess device(s) capable of accessing the internet only with the express permission of the defendant's agent.
>
> 2. The defendant may access the internet only to the extent and manner as approved by the defendant's agent. However, the agent shall not withhold permission for the defendant's access through public devices for purposes of obtaining employment or performing any legitimate government functions such as filing taxes or renewing [a] driver's license or license plates, etc.
>
> 3. If the possession of devices or access to the internet is approved, the defendant shall provide his agent with the name or number of every electronic mail account he uses, the internet address of every website he creates or maintains, every internet user name he uses, and the name and address of every public or private internet profile he creates, uses, or maintains.

Those extended supervision conditions are a subject of this appeal.[4]

¶16    In addition, the circuit court rejected King's request to modify his sentence.

¶17    King appeals.

---

[4] For ease of reading, in the Discussion portion of this opinion we will refer to the August 2019 court-ordered extended supervision conditions that King challenges as the "internet conditions." Also, we will discuss the circuit court's reasoning for the internet conditions later in this opinion.

## DISCUSSION

¶18     King argues that the circuit court erred in imposing the internet conditions because the conditions violate his rights to freedom of speech and freedom of association under the First Amendment.  King also argues that the circuit court erred in denying his sentence modification request to lessen his period of imprisonment based on a purported new factor.  We address each argument in turn.

### I.  The Internet Conditions Are Not Unconstitutional.

¶19     We begin our analysis of the internet conditions by discussing governing principles and our standard of review.

### A.  Governing Principles and Standard of Review.

¶20     "Sentencing courts have wide discretion and may impose any conditions of probation or supervision that appear to be reasonable and appropriate."  *State v. Stewart*, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165; *see also* WIS. STAT. §§ 973.01(5) and 973.09(1)(a).[5]   Also of importance to our analysis is that "[c]onvicted felons do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime."  *Stewart*, 291 Wis. 2d 480, ¶12.

---

[5] In *State v. Koenig*, 2003 WI App 12, ¶7 n.3, 259 Wis. 2d 833, 656 N.W.2d 499, we concluded that "authority relating to the propriety of conditions of probation is applicable to conditions of extended supervision."

¶21    We apply a two-part test to determine whether a condition of extended supervision is unconstitutional.  A condition of extended supervision "may impinge upon constitutional rights as long as" the condition:  (1) is not overly broad in protecting the community and victims; and (2) is "reasonably related to the person's rehabilitation."  *State v. Rowan*, 2012 WI 60, ¶¶4, 10, 341 Wis. 2d 281, 814 N.W.2d 854 (quoted sources omitted); *Stewart*, 291 Wis. 2d 480, ¶12; *see also State v. Miller*, 175 Wis. 2d 204, 208, 499 N.W.2d 215 (Ct. App. 1993) (stating that this court uses those same standards when considering whether a supervision restriction is constitutional under the First Amendment).

¶22    A condition of supervision is reasonably related to a defendant's rehabilitation if the condition "assists the convicted individual in conforming his or her conduct to the law."  *Rowan*, 341 Wis. 2d 281, ¶10 (quoting *State v. Oakley*, 2001 WI 103, ¶21, 245 Wis. 2d 447, 629 N.W.2d 200).  This is appropriate in part because "encouraging lawful conduct" increases "protection of the public."  *Id.*

¶23    Where, as here, the condition is content neutral, that is to say, where the condition is imposed without reference to the content of the regulated activity, intermediate scrutiny is applied.  *See State v. Jackson*, 2020 WI App 4, ¶6 n.4, 390 Wis. 2d 402, 938 N.W.2d 639; *see also Packingham*, 137 S. Ct. at 1736.[6]

---

[6] In contrast, when a regulation is content based, the regulation is subject to strict scrutiny.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 and n.6 (1989); *State v. Jackson*, 2020 WI App 4, ¶6 n.4, 390 Wis. 2d 402, 938 N.W.2d 639.  Neither party contends that strict scrutiny applies here, and we agree because the internet condition does not address or reference the content of speech or activity.  *See generally Jackson*, 390 Wis. 2d 402, ¶6 n.4.

Separately, we recognize that *Jackson* and *Packingham* discussed the constitutionality of statutes, as opposed to court-ordered conditions of supervision.  Nonetheless, King does not dispute that intermediate scrutiny applies in these circumstances.

The intermediate scrutiny test allows the government to impose reasonable, content-neutral restrictions on speech that are "narrowly tailored to serve a significant governmental interest." *Packingham*, 137 S. Ct. at 1736 (quoting *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quotations omitted)); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoted source omitted). A condition need not be the least restrictive means of advancing the government's interests in order to satisfy the "narrowly tailored" requirement of intermediate scrutiny. *See Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 662 (1994). Rather, the standard is met so long as the restriction "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* (quoting *Ward*, 491 U.S. at 799) (quotations omitted).

¶24 When a defendant seeks to have conditions of his or her supervision changed, the defendant bears the burden of showing cause for the modification. *See State v. Hays*, 173 Wis. 2d 439, 448, 496 N.W.2d 645 (Ct. App. 1992) (stating that the proponent bears the burden "to establish by a clear preponderance of the evidence that there is cause to modify the terms and conditions of [supervision]"). Further, our analysis takes into account the particular circumstances presented to the circuit court. Our supreme court instructs that, in addressing a "challenge to the constitutionality" of an extended supervision condition:

> It is important to highlight the fact that … we analyze the constitutionality of an individualized supervision condition that applies only to [the particular defendant] and was imposed by a circuit court pursuant to its authority under Wis. Stat. § 973.01(5) after the circuit court made an individualized determination that the condition was necessary based on the facts in this case.

*Rowan*, 341 Wis. 2d 281, ¶9.

¶25     When reviewing a challenge to conditions of extended supervision, we generally "review such conditions under the erroneous exercise of discretion standard to determine their validity and reasonableness measured by how well they serve their objectives:   rehabilitation and protection of the state and community interest." *Stewart*, 291 Wis. 2d 480, ¶11.  However, the determination of whether a condition of supervision violates a defendant's constitutional right is a question of law which we review de novo. *Id.*, ¶12.

## B.  Preliminary Areas.

¶26     We now consider two preliminary areas which inform our review of the constitutionality of the internet conditions.  First, we discuss the specifics of the internet conditions and, second, we discuss the scope of the Supreme Court's opinion in *Packingham*.

## 1.  The Internet Conditions.

¶27     We find it useful to our analysis to break down the internet conditions into essential elements.

¶28     Paragraph 1 of the internet conditions states that King "may possess device(s) capable of accessing the internet."  But, King may do so "only with the express permission of" King's DOC agent.

¶29     Paragraph 2 states that King "may access the internet."  However, he may do so "only to the extent and manner as approved by" King's DOC agent.  That paragraph then specifies that the agent "shall not withhold permission" for King to access the internet if King does so through "public devices" and for the purpose of "obtaining employment or performing any legitimate government

functions such as filing taxes or renewing [a] driver's license or license plates, etc."

¶30    Paragraph 3 states that, if King is given permission by his DOC agent to possess devices capable of accessing the internet and King accesses the internet with the approval of the DOC agent, then King must provide the agent with "the name or number of every electronic mail account he uses, the internet address of every website he creates or maintains, every internet user name he uses, and the name and address of every public or private internet profile he creates, uses, or maintains."[7]

¶31    To summarize, the internet conditions do not bar King from possessing devices capable of accessing the internet, and King may access the internet.  To do either, King must have the prior approval of his DOC agent, and the agent is restricted to some degree, as noted in paragraph 2 of the conditions, in his or her ability to withhold approval.

## 2.  Scope of *Packingham*.

¶32    Relying on *Packingham*, King argues that, because the internet conditions restrict his access to the internet, it then follows that the conditions are unconstitutionally overbroad.  Because *Packingham* is a predicate to King's arguments, we now discuss the Court's holding in that case and whether the holding governs the question of the constitutionality of the internet conditions.

_____

[7] King does not contend that the information that must be produced pursuant to Paragraph 3 violates his constitutional rights.  As a result, this paragraph of the internet conditions will be discussed later in this opinion within the context of King's contention that only paragraph 3 of the internet conditions is "narrowly tailored."

¶33    In *Packingham*, the Supreme Court considered the constitutionality of a North Carolina statute that prohibited registered sex offenders from accessing "a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages." *Packingham*, 137 S. Ct. at 1733 (quoted source omitted). Packingham was a registered sex offender but had concluded his sentence and was no longer on state supervision of the criminal justice system. *See id.* at 1734, 1737. Packingham was convicted of violating the statute because he posted about a traffic ticket on a Facebook account registered in his name. *See id.* at 1734.

¶34    Applying intermediate scrutiny, the Court determined that the North Carolina statute was unconstitutional because it was not narrowly tailored to serve the significant governmental interest of protecting victims of sexual offenses. *See id.* at 1736-37. The Court held that, by "foreclose[ing] access to social media altogether," the North Carolina statute "prevent[ed] the user from engaging in the legitimate exercise of First Amendment rights." *Id.* at 1737.

¶35    We now discuss whether the holding in *Packingham* governs our analysis in this appeal.

¶36    The circuit court concluded that the holding in *Packingham* does not govern the question of whether the internet conditions violate King's First Amendment rights because *Packingham* is not applicable to convicted criminals who, like King, have not completed their sentences and are still subject to government supervision for their crimes. King contends that ruling by the circuit court is "an error of law." King asserts that *Packingham* is "plainly applicable in the realm of supervision." For the following reasons, we agree with the circuit

13

court that *Packingham* does not control our analysis in determining if the internet conditions impermissibly infringe on King's First Amendment rights.

¶37 First, King concedes that *Packingham* does not "expressly speak to the First Amendment rights of supervisees." King understates the point because the Court twice discussed that the restrictions in the North Carolina statute applied to registered sex offenders who had completed their sentences and were no longer subject to the supervision of the courts. *See id.* The Court stated that "[o]f importance" to the Court's discussion was "the troubling fact that the [North Carolina statute] imposes severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system." *Id.* The Court also considered that "[i]t is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences." *Id.* The Supreme Court did not address whether the restrictions in the North Carolina statute are constitutionally permissible if a person is still on government supervision as part of the sentence for a crime.

¶38 Second, numerous federal and state courts writing in the wake of *Packingham* have agreed with that conclusion and have declined to extend the holding in *Packingham* to the question of the constitutionality of conditions of supervised release (such as extended supervision) that restrict the supervisee's access to the internet. *See, e.g.*, *United States v. Perrin*, 926 F.3d 1044, 1048-49 (8th Cir. 2019) (stating that a condition of the defendant's supervised release is part of a defendant's sentence and is not unconstitutional under the holding in *Packingham* because the statute at issue in *Packingham* prohibited registered sex offenders from accessing commercial social-networking sites after completing their sentences); *United States v. Carson*, 924 F.3d. 467, 473 (8th Cir. 2019) (stating that supervised release is part of a defendant's sentence and, because

*Packingham* concerned only a post-sentence restriction, the *Packingham* holding does not limit a sentencing court's restriction of access to the internet during the term of supervised release); *United States v. Peterson*, 776 F. App'x 533, 534 and n.2 (9th Cir. 2019) (unpublished mem.) (calling defendant's reliance on *Packingham* "misguided" and upholding a prohibition on computer possession because the district court has "broad discretion in setting conditions of supervised release, including restrictions that infringe on fundamental rights" (quoted source omitted)); *United States v. Halverson*, 897 F.3d 645, 657-58 (5th Cir. 2018) (noting that the sentence included supervised release conditions that restricted internet access without prior approval of the probation officer and, discussing *Packingham*, concluding that "[t]he driving concern of the Court was the imposition of a severe restriction on persons who had served their sentences and were no longer subject to the supervision of the criminal justice system"); *United States v. Antczak*, 753 F. App'x 705, 715 (11th Cir. 2018) (unpublished) ("Put differently, unlike the condition imposed on Antczak for his past behavior, the statute at issue in *Packingham* was prospective: rather than simply punishing a past crime, the statute there made it a new felony for a person to use all social-media outlets, even though that person had had all impingements upon his constitutional rights lifted by fully serving the prior sentence."); *United States v. Rock*, 863 F.3d 827, 831 (D.C. Cir. 2017) (concluding that a condition imposed as part of a defendant's supervised-release sentence is not unconstitutional under *Packingham* because *Packingham* addressed a post-custodial restriction); *United States v. Pedelahore*, No. 1:15cr24-LG-RHW, 2017WL4707458 at *2 (S.D. Miss. 2017) ("The *Packingham* decision is inapplicable to [the defendant's] circumstances. Even while on supervised release, [the defendant] is serving his criminal sentence, and the court has broad discretion in establishing the conditions under which [the defendant] will serve the supervised release portion of his

sentence."); ***Alford v. State***, 279 So. 3d 752, 756 (Fla. Ct. App. 2019) ("In sum, we agree with the cases … that distinguish ***Packingham*** because it involved a statute that criminalized future behavior and not a condition of supervision that is part of a sentence."); *cf.* ***United States v. Washington***, 763 F. App'x 870, 872 (11th Cir. 2019); ***United States v. Whitten***, No. 7:14CR00049, 2018WL1935872 at *5 n.2 (W.D. Va. Apr. 24, 2018); ***United States v. Farrell***, No. 4:06-CR-103, 2018WL1035856 at *2 (E.D. Tex. Feb. 23, 2018); and ***Archer v. State***, No. 13-18-00059-CR, unpublished, 2019WL2221677 at *3 (Tex. App. May 23, 2019).

¶39    To support his contention that ***Packingham*** is "plainly applicable" to persons on supervised release as part of their sentence, King cites three cases but those are inapposite.

¶40    ***United States v. Eaglin***, 913 F.3d 88 (2nd Cir. 2019), applied the ***Packingham*** holding to the question of the constitutionality of a condition that imposed a complete ban on internet access during supervised release unless the district court (rather than a probation agent) allowed the defendant to use the internet. ***Id.*** at 93, 95-96. The holding in ***Eaglin*** is of limited applicability in this appeal because the ***Eaglin*** court-ordered restrictions are distinguishable from the internet conditions to which King is subject. Three opinions from the United States Court of Appeals for the 2nd Circuit, the same court that issued ***Eaglin***, have recognized this distinction and rejected the contention that ***Packingham***'s holding applies to persons on supervised release where, as is the case with King, a DOC agent has authority to allow the defendant permission to access the internet as opposed to the supervision restrictions in ***Eaglin*** that required the supervisee to return to court each time he requested to use the internet. ***U.S. v. Leone***, 813 F. App'x 665, 669 (2nd Cir. 2020) (summary order); ***U.S. v. Savastino***, 777 F. App'x 4, 7 (2nd Cir. 2019) (summary order); *see* ***U.S. v. Browder***, 866 F.3d 504, 511

n.26 (2nd Cir. 2017), *cert. denied sub nom. **Browder v. U.S.***, 438 S. Ct. 693 (2018).

¶41    King also relies on ***People v. Morger***, No. 123643, 2019WL6199600 (Ill. Nov. 21, 2019).  There, the social media ban at issue was "absolute[] [and] admit[ed] no exceptions for legitimate use … which could be supervised and overseen by a defendant's probation officer," and the court concluded that such a ban was unconstitutional under the holding of ***Packingham***.  ***Id.*** at *12-13.  But, as already noted, King's circumstances are distinguishable from the facts in ***Morger*** because King's DOC agent has court-ordered authority to allow King access to the internet.  For that reason, we do not find the holding of ***Morger*** to be persuasive in reviewing the constitutionality of King's extended supervision conditions.

¶42    Finally, King relies on ***United States v. Holena***, 906 F.3d 288 (3rd Cir. 2018).  However, the ***Holena*** court remanded the district court's supervision condition because of the "sparse record" and the need for the district court to "make findings to support any restrictions it chooses to impose on" the defendant's internet and computer use.  ***Id.*** at 291.  Here, as we will discuss, the circuit court made such findings.  As a result, ***Holena***'s holding also has limited applicability in reviewing the internet conditions at issue in this appeal.

¶43    To recap, in ***Packingham*** the Supreme Court addressed whether the North Carolina statute was unconstitutional as applied to a defendant who had already completed his sentence and whose statutorily imposed internet restrictions will remain in place and cannot be modified until Packingham is no longer a registered sex offender.  *See **Packingham***, 137 S. Ct. at 1737.  The Court did not address the constitutionality of internet restrictions which can be moderated by a

DOC agent while the convicted felon, such as King, is on supervised release as part of his or her sentence, and whose internet access restrictions continue only to the termination of the sentence. We conclude, as have numerous courts, that the Court's holding in *Packingham* does not control the issue of the constitutionality of internet access supervision conditions ordered by a court as part of a sentence for a crime.

¶44     We next discuss the specific arguments of the parties and facts of this case and conclude that the internet conditions do not impermissibly infringe King's freedom of speech rights.

## C.  The Internet Conditions Do Not Impermissibly Infringe King's Constitutional Right to Freedom of Speech.

¶45     King argues that portions of the internet conditions are unconstitutionally overbroad and, as a result, violate his right to freedom of speech under the First Amendment.[8]  Because it will assist our analysis, we next delineate the specific contours of King's request to vacate some of the internet conditions, and we then discuss whether the internet conditions are, as argued by King, a "blanket ban" on his access to the internet.[9]

---

[8] King does not make an argument regarding the internet conditions not being reasonably related to his rehabilitation that is separate in any material way from his arguments that the internet conditions are unconstitutionally overbroad.  Therefore, we follow the lead of the parties and focus on whether the internet conditions are unconstitutionally overbroad.

[9] King observes that he requested only that the circuit court "vacate" the internet conditions of his extended supervision because, pursuant to WIS. STAT. § 302.113(7m)(e)1., a person may not petition to modify extended supervision conditions earlier than one year before the scheduled date of release to extended supervision.  *See State v. Fisher*, 2005 WI App 175, ¶¶8-14, 285 Wis. 2d 433, 702 N.W.2d 56 (stating that § 302.113(7m)(e)1. does not apply when a person seeks to abolish—rather than modify—a condition of extended supervision).  Regardless,
(continued)

18

### 1. Objections to Portions of the Internet Conditions.

¶46   King objects to paragraphs 1 and 2 of the internet conditions. As noted, paragraph 1 does not bar King from possessing a device capable of accessing the internet. Rather, the paragraph's one restriction is that King must obtain permission from his DOC agent before possessing a device capable of accessing the internet.

¶47   Similarly, paragraph 2 of the internet conditions does not bar King from accessing the internet. That paragraph states that King may do so, but such access must be consistent with the permission of King's DOC agent. That paragraph restricts the authority of the DOC agent in that the agent must give King permission to access the internet for King to "obtain[] employment" and to "perform[] any legitimate government functions."[10]

¶48   King does not object to the reporting requirements in paragraph 3 of the internet conditions (except to the extent that paragraph references the requirements for permission from his DOC agent mentioned in paragraphs 1 and

---

neither party objects to our consideration of the constitutionality of the circuit court's internet conditions, which were modified by the circuit court after input from the parties.

[10] For the first time in his reply brief, King makes a short, conclusory argument that it is unreasonable to expect him to access the internet through "public devices" because such devices may not be available to him. We could reject that assertion for the reason that it was raised for the first time in a reply brief and the State has not had a chance to respond to the assertion. *See Richman v. Security Savs. & Loan Ass'n.*, 57 Wis. 2d 358, 361, 204 N.W.2d 511 (1973). Beyond that, it is King's burden to show that an extended supervision condition should be vacated. *See State v. Hays*, 173 Wis. 2d 439, 448, 496 N.W.2d 645 (Ct. App. 1992). Here, there is no basis in the record for us to conclude that such internet access is not available to King. In fact, it is not disputed that internet access was granted to King at a "job center" as part of the 2009 court-ordered restrictions on internet access. King gives us no reason to believe that such access is no longer reasonably available to him.

2).  Indeed, when asked by the circuit court to set forth those internet access restrictions that King believes are reasonable and constitutional under these circumstances, King provided to the court the language in paragraph 3 regarding notifications which must be given to his DOC agent upon his access to the internet.  That language mirrors the reporting requirements imposed upon all persons, such as King, who are on the sex offender registry.  *See* WIS. STAT. § 301.45(1g) and (2)(a)6m.

¶49     To summarize, King contends that the internet conditions violate his right to freedom of speech because he needs prior permission of his DOC agent to: (a) possess a device that can access the internet; and (b) access the internet.

### 2.  The Internet Conditions Are Not a "Blanket Ban."

¶50     In *Packingham*, the statute at issue in essence barred registered sex offenders from using websites that may be accessed by children.  *See Packingham*, 137 S. Ct. at 1733-34.  In an attempt to establish that the internet conditions here come within the purview of *Packingham*, King stakes his argument on the premise that the internet conditions are, as labeled in briefing in this court, a "blanket ban," "near-blanket ban," "essentially … a complete ban," and a "total [i]nternet ban."  For the reasons that follow, we reject King's argument that the internet conditions are a "blanket ban" on King's internet access while on extended supervision.

¶51     First, King fails to support his assertion that the internet conditions act as a "blanket ban" with any reasoning or facts.  In his brief-in-chief, King briefly acknowledges that his DOC agent has the authority to approve his internet use and possession of devices to access the internet.  However, King's only argument about DOC supervision of his internet use and possession of devices to

access the internet is in his reply brief. There, in one conclusory sentence, King asserts that the internet conditions "leave too much undirected discretion to Mr. King's agent." But, King gives no reasoning, and points to nothing in the record, to support that assertion. We will not abandon our neutrality in an attempt to develop arguments for parties. *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.[11]

¶52    Second, in the context of the constitutionality of internet restrictions on supervisees and the holding in *Packingham*, federal courts have recognized the obvious:  requiring a supervising agent's approval of internet use is not a "ban" on access to the internet. *See, e.g.*, *Leone*, 813 F. App'x at 669 (stating that a condition of release "merely impose[d] *conditions* on Leone's [i]nternet use, not an absolute ban"); *Perrin*, 926 F.3d at 1050 ("For one, the condition was not 'a complete ban on [i]nternet access' because it permitted the defendant 'to access the [i]nternet as long as he obtain[ed] permission from the probation office.' Thus, the condition was 'treated as merely a partial deprivation of [the defendant]'s interest in having unfettered access to the [i]nternet.'" (some alterations in the original) (citations omitted) (quoted source omitted)); *see also* *Browder*, 866 F.3d at 511 n.26 ("We need not dwell on the implications of

---

[11] In his brief-in-chief, King may attempt to make an abbreviated argument to the effect that the internet conditions are a purported "blanket ban" on his internet use. He alleges: "Furthermore, as his revocation paperwork indicated, using social media – even when used for his personal business – was not considered within the ambit of permissible use." To the extent we understand that one-sentence argument, it misstates the record. While on extended supervision and probation, King refused to ask his agent for permission to use social media as was required by the internet conditions. In addition, he used social media well beyond running a personal business and, as already discussed, in ways that clearly violated his supervision conditions at the time. Therefore, King's truncated argument does not support his claim that the internet conditions are a "blanket ban."

*Packingham* here. For one thing, *Packingham* is not directly on point. It involved an internet *ban*—not internet or computer *monitoring*—and that ban extended beyond the completion of a sentence.").

¶53 Third, we have approved supervisory conditions that require agent approval prior to an exercise of constitutional rights, in cases we now summarize. In ***Krebs v. Schwarz***, 212 Wis. 2d 127, 568 N.W.2d 26 (Ct. App. 1997), Krebs was prohibited from entering into an intimate or sexual relationship without first obtaining his DOC agent's approval. *See id.* at 129-30. Krebs contended that the condition was unconstitutionally overbroad. *Id.* at 130-31. We concluded that such a condition, based on the facts of the case, was "both reasonable and is not overly broad." *Id.* at 131. In discussing that Krebs was required to obtain prior approval from his DOC agent to engage in activities that, for most people, are constitutionally protected, we stated: "Although this may be a constriction of a constitutional right, it is not a denial of it. We conclude that the condition is not overly broad; rather, it is no more than an inconvenience." *Id.*

¶54 In *Miller*, 175 Wis. 2d 204, based on prior convictions for making harassing calls to women, Miller was barred, as a condition of his probation, from contacting by phone any woman not related to him unless he had permission of his probation agent to do so. *Id.* at 208. Miller argued that the condition was unconstitutionally overbroad and violated his First Amendment rights. *Id.* at 210. We rejected Miller's argument and stated:

> Finally, if Miller's need to call an unrelated woman is compelling, he may seek permission from his probation officer. Miller argues however that there are no standards to guide the probation officer in granting or denying him permission to call a woman. He asserts that his [F]irst [A]mendment rights may not be made vulnerable to the unbridled discretion of a public officer. A condition of probation is conceptually different from a police power

> regulation. It is sufficient for constitutional purposes that a criminal defendant has judicial protection from the arbitrary administration of a condition of probation.

*Id.* at 212.

¶55 In determining if supervisory conditions are unconstitutionally overbroad, this court can be "guided" by standards of over breadth analysis used for statutes. *State v. Lo*, 228 Wis. 2d 531, 538, 599 N.W.2d 659 (Ct. App. 1999). One of those standards is that we are not to construe conditions "in derogation of common sense." *Id.* at 538-39. Here, King gives us no basis to conclude that his DOC agent will use his or her discretion unreasonably, and the circuit court can hear any reasonable requests from King if he believes that the DOC's actions are unreasonable.

¶56 For those reasons, we conclude that the internet conditions are not a "blanket ban" on King's possession of a device to access the internet or King's access to the internet.

¶57 We next discuss why the requirements of the internet conditions that King have his DOC agent's approval to possess such a device or access the internet are not unconstitutionally overbroad and do not impermissibly infringe King's First Amendment right to freedom of speech.

### 3. The Internet Conditions Are Not Overbroad.

¶58 As instructed by the supreme court, our discussion must include an "individualized determination that the [extended supervision] condition was necessary based on the facts in this case," and we must determine whether the condition is overly broad in light of the history and actions of this particular convicted sex offender. *See Rowan*, 341 Wis. 2d 281, ¶9; *see also id.*, ¶¶14-15.

To inform that determination, we begin by considering the circuit court's analysis that led to the entry of the internet conditions. At the sentencing after revocation of King's probation, and the separate hearing concerning King's postconviction hearing, the circuit court made statements and findings germane to the issue before us which we now summarize.

¶59 The circuit court considered the crimes King was convicted of in this case, use of a computer to facilitate a sex crime and child enticement. "As pointed out, the potential dangerousness is high. At the time the defendant was 44, thought he was going to be engaging in sexual acts with both a 15-year-old and possibly a 14-year-old." The court further noted that King was previously convicted of sexual assault of a thirteen-year-old girl and physical abuse of a child.

¶60 The court also considered that King's extended supervision and probation had been revoked previously, and that informed King's character and his risk to society. The circuit court noted King's "danger to the community at the time that the crime was committed" and his numerous violations of his previous extended supervision and probation supervision rules that restricted his internet access. Based on those facts, the circuit court emphasized that King's actions were "serious violations, and the rules of probation are important, and in particular those specific rules."

¶61 The circuit court stressed the importance of the supervision conditions restricting King's access to the internet that, in light of King's criminal conduct, helps to restrict King's "access to those very tools which the defendant used in order to engage in the criminal conduct that was the basis of the charge."

¶62　King sent a letter to the circuit court prior to his sentencing after revocation of probation, and the court stated the following regarding that letter and King's failure to understand the seriousness of his supervision conditions:

> [A]t the end of that [letter] Mr. King pointed out "I have not caught another crime. If it wasn't for my court-ordered rules, I would have succeeded." The Court agrees with that, but if you … unpack that statement, I think Mr. King may have missed the point. There were court-ordered rules that needed to be followed, and if you don't follow those you aren't successful ….

¶63　Similar to one of King's arguments in this appeal, King told his DOC agent before revocation of King's probation that it was difficult for him to live without access to the internet. In discussing that contention and King's failure to accept the seriousness of his supervision conditions, the circuit court stated:

> The problem was the defendant chose to have that [internet] access that was unfettered and unsupervised, and that does give the Court great pause in regards to what risk that shows. It shows that the defendant was not utilizing what he had learned in sex offender treatment thus far in regards to the risks and how that would be perceived by the community.

¶64　The circuit court recognized the importance of the internet in daily life, but the court also stressed that there must be restrictions on King's use of the internet in light of his history and crimes:

> We are now at a point … where there may be other valid uses that you can only do through the internet. The question is how to get at that and still allow the protection of the public, which the Court … believe[s] is appropriate and tailored to this particular offense and this particular defendant's history ….

After further input from the parties, the circuit court then crafted the internet conditions. The internet conditions are, according to the circuit court, intended to

provide "a level of protection for the public," and those conditions will provide "a measure to protect the public."

¶65 Also as context for our analysis, we note that King does not dispute that the State has a significant interest in protecting the public in general and children in particular from convicted sex offenders. *See Jackson*, 390 Wis. 2d 402, ¶18 ("It is without dispute that the government has a significant interest in protecting the public from sex offenders and assisting law enforcement in 'protecting the public – particularly children' from those offenders.") (citing *State v. Smith*, 2010 WI 16, ¶27, 323 Wis. 2d 377, 780 N.W.2d 90 and *Packingham*, 137 S. Ct. at 1736). As noted, King concedes that the State can permissibly place restrictions on his access to the internet as part of his extended supervision conditions. Further, as already discussed, *Packingham* excludes from its analysis a particular subset of convicted criminals, those still on supervised release for a crime and, for that reason, the analysis in *Packingham* is not controlling. Nonetheless, in his reply brief, King cites *Packingham* for the proposition that access to the internet is important to daily life, even for convicted criminals.[12] The Court emphasized the importance of social media, including sites such as Facebook and Twitter, in modern life and explained that internet use is protected by the First Amendment: "While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of

---

[12] More specifically, in King's reply brief, King takes a less strident approach than the argument made in King's brief-in-chief, that *Packingham* is "plainly applicable in the realm of supervision." In his reply brief, King states: "Mr. King cites *Packingham* [*v. North Carolina*, 137 S. Ct. 1730 (2017)] primarily to demonstrate the significance the Court ascribes to government action limiting internet access as curtailing First Amendment rights, and the care that must be taken when doing so, even for sex offenders."

views, today the answer is clear. It is cyberspace ... and social media in particular." ***Packingham***, 137 S. Ct. at 1735. However, the circuit court took into practical account that important concept in fashioning the internet conditions. As an example, the circuit court stated:

> The comment made here is that access to the internet is very different now than it was even a couple of years ago…. [T]hat does curtail some perhaps valid access that a defendant may need to have.

¶66 With that background, we conclude that the internet conditions are not unconstitutionally overbroad. King has a significant history of failing to comply with even the most restrictive conditions of supervision and probation limiting his access to the internet. King's history of multiple and persistent violations of supervision conditions restricting his access to the internet provided the circuit court with an ample basis to find that King has not been deterred by those restrictive conditions. As some examples, and after convictions recently and in the past for using a computer to facilitate a sex crime, child enticement, sexual assault of a child, and child abuse, King violated those supervisory conditions by:

- having a Facebook account under a false name;
- searching for the term "teen" on the internet and having pornographic images on his computer;
- sending money to, and planning to meet, a woman he communicated with on the internet;
- having a profile on sugardaddyforme.com; and
- refusing to give his DOC agent the user name and password for the device he used to access the internet.

¶67 In asking to vacate portions of the extended supervision conditions, King attempts to re-write the history that was before the circuit court. Even when instructed not to use the internet, he did so and the circuit court could reasonably conclude that this raised significant concerns about the need to protect the public and children in light of his previous actions. The court properly balanced goals and facts specific to King and the need to protect the community. The internet conditions set by the circuit court are not unconstitutionally overbroad, are reasonably related to King's rehabilitation, and are narrowly tailored.

### 4. The Internet Conditions Are Sufficiently Narrow.

¶68 King also argues that the internet conditions are unconstitutionally overbroad because "there are more narrowly-drawn tools" available, specifically the provisions of WIS. STAT. § 301.45(2)(a)6m., which King proposed to the circuit court and are contained in paragraph 3 of the internet conditions. We disagree.

¶69 As discussed, WIS. STAT. § 301.45(2)(a)6m. provides in relevant part that a person subject to the sex offender registry requirements must inform the DOC of "[t]he name or number of every electronic mail account the person uses, the [i]nternet address of every website the person creates or maintains, every [i]nternet user name the person uses, and the name and [i]nternet address of every public or private [i]nternet profile the person creates, uses, or maintains." *Id.*; s*ee Jackson*, 390 Wis. 2d 402, ¶2. If any of this information changes, the person subject to the sex offender registry must inform the DOC of the change but can wait up to ten days after the change to do so. Sec. 301.45(4). King is already subject to these statutory conditions as a registered sex offender.

¶70 King asserts that the internet conditions are unconstitutionally overbroad whereas WIS. STAT. § 301.45(2)(a)6m. is less restrictive and, according to King, sufficiently "advances the goals of rehabilitation and protecting the public." The State responds that the government has an interest in supervising King's internet use more closely than provided for in § 301.45(2)(a)6m. Given King's crimes and his repeated failures to comply with conditions of supervision, we agree with the State. Moreover, a restriction need not be the least restrictive option in order to pass constitutional muster. *See Turner Broad. Sys., Inc.*, 512 U.S. at 662. Here, the internet conditions selected by the circuit court promote the government's interest in protecting the public from King. For the reasons already discussed, the circuit court properly rejected this approach as insufficient in light of King's history and the seriousness of his criminal convictions.

¶71 In sum, we are not persuaded that the circuit court's decision implementing the internet conditions is unconstitutionally overbroad such that it impermissibly interferes with King's freedom of speech rights under the First Amendment.

### D. King Fails to Show That the Internet Conditions Unconstitutionally Restrict His Freedom of Association.

¶72 We now turn to King's argument regarding freedom of association.

¶73 King argues that the internet conditions are unconstitutionally overbroad because, "[g]iven the widespread use of social media between family members and friends," the condition "directly limits [his] ability to maintain established relationships with family and close personal friends." King contends that there are "two distinct senses" of "freedom of association." *See generally Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984) (stating that the

29

freedom of association has been discussed "in two distinct senses"). In this case, the pertinent portion of freedom of association under the First Amendment is the freedom to have "intimate association[s]."[13] King concedes that the State can properly impose on supervisees restrictions limiting association with persons or groups.

¶74 The internet conditions restrict King's access to social media and, by doing so, the conditions inhibit King's ability to maintain and develop relationships with family and friends. However, to repeat, "[c]onviction of a crime invariably leads to restrictions on—and sometimes outright denials of—a defendant's constitutional rights." *Lo*, 228 Wis. 2d at 538. For the same reasons that King's restricted access to the internet is proper in view of King's First Amendment right to freedom of speech, the internet conditions are narrowly tailored in light of King's First Amendment right to freedom of association.

¶75 In sum, the internet conditions are not unconstitutionally overbroad regarding King's freedom of association.[14]

---

[13] We recognize that the First Amendment protects the freedom of association regarding "expressive association." *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). King makes no argument separate from his First Amendment argument regarding freedom of speech to support this contention. Therefore, we limit our discussion to King's right to freedom of intimate association.

[14] We emphasize that this opinion does not set forth a list of characteristics of a supervisee which must be present to restrict internet access during supervision by the State. Individualized determinations are to be made by circuit courts based on the facts of each particular case.

## II. The Circuit Court Properly Denied King's Request for Sentence Modification.

¶76    King argues that the circuit court erred in denying his request that the total period of his post-revocation imprisonment be reduced based upon a new factor.  King contends that he has demonstrated the existence of the new factor and asks this court to remand this matter to the circuit court to determine whether the purported new factor justifies sentence modification.  We begin by setting forth governing legal principles and our standard of review.

### A.  Governing Principles and Standard of Review.

¶77    A circuit court has inherent authority to modify a defendant's criminal sentence based upon a showing by the defendant of a "new factor."  *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828.  To prevail, the defendant must show the following:  (1) a "new factor" exists; and (2) the "new factor" justifies sentence modification.  *Id.*, ¶¶33, 37-38.

¶78    A "new factor" is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because, even though it was then in existence, it was unknowingly overlooked by all of the parties."  *Id.*, ¶¶40, 52 (quoting *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975)).  "Whether a fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law," which we review de novo.  *Id.*, ¶33.  The determination of whether the defendant has shown that the new factor justifies sentence modification "is committed to the discretion of the circuit court, and we review such decisions for an erroneous exercise of discretion."  *Id.*, ¶34.  A court

31

need not address both aspects of the new factor inquiry if a defendant does not make a sufficient showing on either one. *Id.*, ¶38.

### B. King Is Not Entitled to Sentence Modification.

¶79    King argues that the Supreme Court's opinion in *Packingham* is a "new factor" because the holding in *Packingham* is "uniquely applicable" to him. Also, King argues that *Packingham* is highly relevant to the imposition of his sentence because the circuit court's sentence "conflicted with the holding announced in *Packingham*."

¶80    For the reasons explained already, *Packingham* is not controlling in these circumstances.  Also, as discussed, the observation in *Packingham* that accessing the internet may be important in daily life was considered by the circuit court in its sentencing rationale.  Thus, the holding in *Packingham* was not overlooked by the circuit court in the imposition of King's sentence and is not a new factor.

¶81    Accordingly, we conclude the circuit court did not err by denying King's request for modification of his sentence.

### CONCLUSION

¶82    For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.