# COURT OF APPEALS
## DECISION
## DATED AND FILED

## October 1, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1409-CR**

Cir. Ct. No. 2020CF141

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CALVIN DEAN FISH,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Burnett County: MELISSIA R. MOGEN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Calvin Dean Fish appeals from an amended judgment of conviction, entered upon his guilty plea, for burglary of a building or

dwelling. On appeal, Fish challenges the constitutionality of the circuit court's imposed condition of extended supervision that Fish not reside in Burnett County, except in specific circumstances or with prior approval from the court. For the reasons provided below, we affirm the judgment of conviction.

## BACKGROUND

¶2 Fish was charged with several counts related to allegations that he burglarized a property on April 29, 2020. The owners of this property were not commonly present, as it was a "vacation property" for them. A Burnett County sheriff's deputy caught Fish in the act while investigating two previous burglaries at the property, including one that occurred on April 10, 2020. Fish did not dispute that he committed the April 10 burglary. At the time Fish allegedly committed the burglaries, he was residing at his father's cabin in Burnett County after having just been released from custody in Minnesota, where he had been jailed for theft.

¶3 Fish pled guilty to one count of burglary of a building or dwelling related to the April 29 burglary. The circuit court dismissed and read in the remaining counts.

¶4 The circuit court sentenced Fish to two years' initial confinement followed by two years' extended supervision. The court also imposed several conditions to Fish's extended supervision. Pertinent here, Fish was ordered not to have contact with the victims or their Burnett County property and "not to come to

Burnett County unless it is for court-related or probation-related purposes until your sentence is completely served."[1]

¶5 On imposing the latter condition to Fish's sentence, the circuit court noted that Burnett County is largely a vacation destination, particularly in the summer months, and that Fish stole from a family that had been visiting the county for "30 years and … ha[d] put in money and resources to this county." The court acknowledged that Fish had two 2018 Minnesota "theft" convictions and that he had been released from jail for one of those convictions just prior to the burglaries in this case. The court also theorized that Fish had burglarized in Burnett County more than twice, stating: "[T]he law of statistics is that if you were caught, here it's four times, two in Minnesota … [and] two times in Burnett County. The law of statistics tell[s] me there was more than that."

¶6 Fish filed a motion for postconviction relief requesting that the circuit court "strike the condition of his extended supervision that bars him from entering Burnett County." He argued that the court's "banishment condition" was overbroad and unduly restrictive of his liberties. Fish asserted that he wanted to move back in with his father due to Fish's health conditions.

¶7 The circuit court held a postconviction hearing at which it modified the extended supervision condition at issue. Specifically, the court stated that Fish could enter or reside in Burnett County if he first sought permission from the court via a motion. Fish's motion would need to "include all of the necessary information for the court to make the determination of whether or not residing or

---

[1] Although the circuit court used the term probation, it is clear that the court was referencing Fish's term of extended supervision.

moving to Burnett County … is appropriate at that time, or is, in fact, a necessity." The court amended the judgment of conviction to reflect the modified condition.[2] Fish now appeals.

## DISCUSSION

¶8 On appeal, Fish challenges the constitutionality of the extended supervision condition barring him from entering Burnett County except with the circuit court's prior approval or for court and extended supervision purposes. Specifically, he argues that condition of his extended supervision is unconstitutionally overbroad and unduly restrictive of his liberties.

¶9 "Sentencing courts have wide discretion and may impose any conditions of … supervision that appear to be reasonable and appropriate." **State v. Stewart**, 2006 WI App 67, ¶11, 291 Wis. 2d 480, 713 N.W.2d 165; *see also* WIS. STAT. § 973.01(5) (2021-22) ("Whenever [a circuit] court imposes a bifurcated sentence …, the court may impose conditions upon the term of extended supervision."). These conditions "may impinge upon" a convicted felon's constitutional rights because "[c]onvicted felons do not enjoy the same degree of liberty as those individuals who have not been convicted of a crime." *Stewart*, 291 Wis. 2d 480, ¶12.

¶10 "We apply a two-part test to determine whether a condition of extended supervision is unconstitutional." **State v. King**, 2020 WI App 66, ¶21, 394 Wis. 2d 431, 950 N.W.2d 891. A condition is constitutional as long as

---

[2] The extended supervision condition at issue now reads: "Defendant shall not enter Burnett County except for court-related or probation-related purposes unless permitted by the court. (Amended 8/10/22 to add 'unless permitted by the [c]ourt')."

it: "(1) is not overly broad in protecting the community and victims; and (2) is 'reasonably related to the person's rehabilitation.'" ***Id.*** (citation omitted). "[O]ur analysis takes into account the particular circumstances presented to [a] circuit court." ***Id.***, ¶24. Fish bears the burden of showing cause for the removal of the condition. *See **id.***

¶11     "When reviewing a challenge to conditions of extended supervision, we generally 'review such conditions under the erroneous exercise of discretion standard to determine their validity and reasonableness measured by how well they serve their objectives: rehabilitation and protection of the state and community interest.'" ***Id.***, ¶25 (citation omitted). However, "[w]hether a particular condition violates a defendant's constitutional right is a question of law which this court reviews de novo." ***Stewart***, 291 Wis. 2d 480, ¶12.

¶12     Fish has a constitutional right to intrastate travel under the Wisconsin Constitution. *See **Brandmiller v. Arreola***, 199 Wis. 2d 528, 537-39, 544 N.W.2d 894 (1996). However, when imposed as a condition of extended supervision, "[g]eographical limitations, while restricting a defendant's rights to travel and associate, are not per se unconstitutional." ***Stewart***, 291 Wis. 2d 480, ¶13.

¶13     Two opinions from this court guide our analysis. In ***Predick v. O'Connor***, 2003 WI App 46, 260 Wis. 2d 323, 660 N.W.2d 1, a circuit court issued two orders containing conditions prohibiting a defendant, O'Connor, from entering Walworth County, with limited exceptions for court appearances. ***Id.***, ¶¶1, 8-9. O'Connor, who was not a Walworth County resident, had a decade-long history of harassing a specific family and the family's friend within the county. *See **id.***, ¶¶1-2. The harassment included O'Connor ignoring three restraining

5

orders and a contempt of court order, physically assaulting a member of the family, driving her vehicle "at a high rate of speed" toward a jogging family member "such that [the family member] was forced to jump off to the side of the road to avoid getting hit," and attempting to force the family friend's vehicle into oncoming traffic. *Id.*, ¶¶3-7.

¶14    On appeal, we upheld the banishment conditions. We stated that O'Connor twice used her vehicle as a dangerous weapon within the county and had "repeatedly demonstrated that a standard, more narrowly tailored, order" would not "deter her from harassing and endangering the lives" of the family and their friend. *Id.*, ¶19. We also stated that O'Connor posed "a constant and dangerous threat anytime she [was] present in the county" and the "victims deserve[d] to be able to live their lives free from the constant fear of being tormented and attacked." *Id.*, ¶¶19-20. Further, we concluded that the banishment conditions were properly tailored because O'Connor's use of her vehicle as a tool of harassment made her "too mobile and too dangerous" for a more limited restriction. *Id.*, ¶21.

¶15    In *Stewart*, a circuit court imposed as a condition of probation for a felony bail jumping conviction and as a condition of extended supervision for a felony fleeing conviction that the defendant, Stewart, not enter Richmond Township in Walworth County, where Stewart "was an established, longtime resident." *Stewart*, 291 Wis. 2d 480, ¶¶2, 20. The banishment conditions were in addition to no-contact provisions that barred Stewart from having any "contact with the victims, their residences, or immediate family." *Id.*, ¶17. The conditions stemmed from Stewart's criminal history, which included telephone calls "of a sexual nature to one of his neighbors," instances of public nudity and masturbation (one of these being in a neighboring township), and domestic violence. *Id.*, ¶14.

The court stated that it was imposing the conditions due to its concern with protecting the victims of those crimes. *Id.*, ¶15.

¶16    Distinguishing *Predick* and other cases upholding similar conditions, this court held that the conditions imposed on Stewart were "broader than necessary to accomplish" the circuit court's objectives and that the "court could have fashioned a more narrowly drawn condition banishing Stewart from his residence and the immediate neighborhood surrounding it." *Stewart*, 291 Wis. 2d 480, ¶16. The no-contact provisions in place as conditions of Stewart's probation and extended supervision provided a "more narrowly drawn restriction" that "already functionally accomplished" the dual goals of rehabilitation and protection of the community by prohibiting contact with the victims and removing Stewart "from the temptation of engaging in the same types of conduct towards his victims." *Id.*, ¶¶17, 20. We further distinguished prior cases by observing that Stewart "was an established, longtime resident of Richmond Township." *Id.*, ¶20.

¶17    We conclude that the condition at issue in this case is not overbroad. The circuit court was concerned with the protection of the victims of Fish's two April 2020 burglaries *and* of other vacation property owners in Burnett County generally. This distinction places the court's condition more in line with the conditions in *Predick* than the conditions in *Stewart*. That is to say, the condition here is not an attempt to protect specific individuals at one location (e.g., a residence), but to protect other vacation property owners from the threat of burglary anytime that Fish is in the county.

¶18    The circuit court's concern for vacation property owners in Burnett County was reasonable when considered in light of all of the circumstances before the court. Although Fish was alleged to have burglarized the same vacation

property at least twice, the court reasonably suspected that Fish had burglarized other vacation properties in Burnett County—a fact to which Fish did not object.[3] The court's suspicion is supported by the facts underlying this case and Fish's recent Minnesota theft convictions. The court also emphasized that Burnett County is largely a vacation destination and that the population of the county decreases tremendously outside of the summer months.[4] Indeed, Fish was charged with two burglaries that occurred in the springtime. Given the foregoing, it was reasonable for the court to assume that Fish had engaged in other burglaries in Burnett County and that if his access to the county was not limited, he would continue his actions throughout the county.

¶19    In addition, given the circuit court's determination that Fish posed a threat to all vacation property owners in Burnett County, the no-contact condition, which applied only to the victims underlying the charges in this case, would not be effective in protecting other property owners. *Cf.* ***Stewart***, 291 Wis. 2d 480, ¶¶17, 20.

¶20    Fish is also not an "established, longtime resident" of Burnett County. *See* ***Predick***, 260 Wis. 2d 323, ¶19; *cf.* ***Stewart***, 291 Wis. 2d 480, ¶20. He characterized his father's cabin as a vacation property, and he did not claim to have ever permanently lived there (barring the time period related to the burglaries

---

[3] The sentencing transcript indicates that Fish agreed with the circuit court's finding that he had burglarized more than two times in Burnett County. After the court's statement, the court noted, "[A]nd you're shaking your head up and down yes because you know it's true. You just got caught this time."

[4] At sentencing, the circuit court also noted that Burnett County is "a place where people come and vacation. They leave their cabins unattended for weeks, perhaps at a time …."

in this case). Rather, Fish had lived with his mother in Minnesota for the sixteen years prior to the underlying burglaries.

¶21 It is also significant that the condition in this case is limited in certain respects that were not present in *Stewart*. First, Fish's extended supervision, and thus the condition, is itself limited to two years. That is to say, Fish will be permitted to freely enter and exit Burnett County in a relatively short period of time compared to the eight-year term of banishment in *Stewart*. Second, Fish is permitted to enter Burnett County in three situations, two of which do not require prior court approval. He can enter for any court proceedings—which is not limited to criminal cases—and as required by his extended supervision. *See Predick*, 260 Wis. 2d 323, ¶¶1, 8. Fish can also reside in Burnett County during his period of extended supervision if he receives permission from the circuit court.[5] *See King*, 394 Wis. 2d 431, ¶53 (stating that this court has previously "approved supervisory conditions that require agent approval prior to an exercise of constitutional rights," noting that although such conditions may

---

[5] On appeal, Fish contends that the circuit court's amendment to the condition—namely, that Fish can reside in Burnett County provided he submits sufficient information for the court to make a determination as to the appropriateness or necessity of such a move—is "unclear." While the court did not offer a specific checklist for Fish to submit, we disagree that the amendment's clarity is at issue. The court's decision will necessarily depend on the circumstances surrounding Fish's life and rehabilitation. Requiring the court to provide a checklist at this stage would be premature.

We note that while a circuit court possesses the "power to sentence" a defendant to prison and impose conditions of extended supervision, "supervision, custody, and control thereafter" belong to the Department of Corrections (DOC). *State v. Williams-Holmes*, 2023 WI 49, ¶10, 408 Wis. 2d 1, 991 N.W.2d 373. Accordingly, conditions of extended supervision may be modified, but only upon a petition to the "sentencing court" by the defendant or the DOC. *Id.*, ¶12; *see also* WIS. STAT. § 302.113(7m)(a). "The statute then provides various processes, standards, and restrictions governing the sentencing court's consideration of the petition." *Williams-Holmes*, 408 Wis. 2d 1, ¶12. Therefore, the circuit court in this case may modify the condition at issue but only after either Fish or the DOC petitions it to do so.

impose "a constriction of a constitutional right, [they are] not a denial of it" (citation omitted)).

¶22 Furthermore, the condition in this case is reasonably related to Fish's rehabilitation. "A condition of supervision is reasonably related to a defendant's rehabilitation if the condition 'assists the convicted individual in conforming his or her conduct to the law.'" *Id.*, ¶22 (citation omitted). The circuit court found that Fish's burglarizing was not the result of substance abuse or needing income. Rather, according to the court, the burglarizing was a "means" to him, which we interpret as signifying that Fish committed the crimes because he had the opportunity and the skill to do so. In other words, Fish's desire to burglarize was not a need that could be remedied with financial or substance-abuse support systems in place. Accordingly, it was reasonable for the court to assume that if Fish were to enter Burnett County, he would be enticed to burglarize again, given the rural nature of the county and the number of vacant properties in the non-summer months. To stop Fish from burglarizing further—and thus protect the residents of the community—the court ordered Fish not to enter Burnett County except in certain circumstances.

¶23 In short, we conclude, as a matter of law, that the condition barring Fish from entering Burnett County, subject to certain exceptions, is constitutional under the facts and circumstances of this case. While the condition certainly impinges upon Fish's constitutional right to travel, that impingement is acceptable in this case. The condition is not overly broad in protecting the community and Fish's victims, and it is reasonably related to Fish's rehabilitation.

*By the Court*.—Judgment affirmed.

10

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.